973 F.2d 463
 38 Soc.Sec.Rep.Ser. 465, Medicare & Medicaid Guide
P 40,461
UNITED STATES of America, Plaintiff-Appellant,
v.
Richard D. LEVIN; Richard D. Levin, M.D., P.S.C., Inc.;
Paul H. Sorg, Defendants-Appellees.
 No. 91-5034.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 13, 1991.
Decided Aug. 7, 1992.
Rehearing and Rehearing En Banc
Denied Nov. 4, 1992.
 
 Louis DeFalaise, U.S. Atty., Office of U.S. Atty., Lexington, Ky., Frederick A. Stine, V, Asst. U.S. Atty., Office of U.S. Atty., Covington, Ky., Sean Connelly (argued and briefed), U.S. Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff-appellant U.S.
 Glenn V. Whitaker (argued and briefed), Vorys, Sater, Seymour & Pease, Cincinnati, Ohio, for defendant-appellee Richard D. Levin.
 Thomas R. Smith (briefed), Cincinnati, Ohio, for defendant-appellee Richard D. Levin, M.D., P.S.C., Inc.
 Charles G. Heyd (argued and briefed), Bauer, Morelli & Heyd, Cincinnati, Ohio, for defendant-appellee Paul H. Sorg.
 Before: KEITH and MARTIN, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 KRUPANSKY, Senior Circuit Judge.
 
 
 1
 This is an appeal from a decision of the United States District Court for the Eastern District of Kentucky dismissing all but 15 counts of a 560-count indictment against the appellees herein with prejudice. The last 15 counts of the indictment were dismissed without prejudice. Defendants-appellees Richard D. Levin, M.D., P.S.C., Inc. (the "Eye Institute") and Richard D. Levin, an individual, had been charged with multiple violations of 42 U.S.C. § 1395nn(b)(1)(B) (1983) (Medicare fraud); 18 U.S.C. § 287 (false claims); 18 U.S.C. § 1341 (mail fraud); and 18 U.S.C. § 1001 (false statements). Defendant-appellee Paul H. Sorg, an employee of the Eye Institute, was charged only in those counts alleging violations of 42 U.S.C. § 1395nn (Medicare fraud). The government has conceded that the false claims and mail fraud counts are legally dependent upon the Medicare fraud counts.
 
 
 2
 The predicate for the criminal charges against the appellees under 42 U.S.C. § 1395nn was a merchandising campaign created for the manufacturers of intraocular lenses (IOL), which are inserted into the eye during cataract surgery to replace a removed diseased lens. The promotion was conducted in conjunction with various cooperating surgical supply companies. The targets of the promotion were medical doctors, primarily ophthalmologists, hospitals and surgical centers engaged in treating cataracts and performing surgical cataract implants.
 
 
 3
 The sales concept, once having been approved by the Department of Health and Human Services (HHS), Health Care Financing Administration (HCFA) and its duly designated carriers, i.e. Medicare, Blue Cross/Blue Shield, Prudential Insurance Co., et al., was actively inaugurated and aggressively implemented by a significant number of major IOL manufacturers and participating surgical supply companies through their representatives and sales personnel. In the instant case, the involved IOL manufacturers were American Medical Optics Co. (AMO) and Ipotex. The participating surgical supply company was Crocker Fels Corporation.
 
 
 4
 The thrust of the sales promotion, with minor variations, was essentially the same throughout the industry. The nucleus of the plan was an arrangement characterized as "bundling" which consisted of offering a free gift or premium in the form of disposable viscosurgical supplies such as plastic boots, gloves, gowns, masks, sutures, Healon syringes, and surgical knives consumed during a cataract surgery or a credit for the value of the premium with the purchase of each IOL. In the instant case, the value of the free premium disposable viscosurgical kit consumed during a single cataract surgical procedure was $97.50. The reasonable and customary charge by a provider hospital, surgical center, ophthalmologist and those similarly situated for an IOL was fixed by HCFA or its designated health care insurance carrier. A provider was entitled to reimbursement from Medicare or other designated health care carrier for the approved reasonable and customary cost of the IOL. In the instant case, the HCFA approved reasonable and customary charge for an AMO lens was $390.00. With the purchase of every AMO lens, the purchaser would receive free disposable viscosurgical supplies valued at $97.50 from Crocker Fels Corporation or a credit in that amount against future purchases of such disposable surgical supplies consumed during a single cataract surgical implant.
 
 
 5
 Defendants were introduced and urged to participate in the sales campaign by Dale Schaefer, a manufacturer's representative for AMO. Pursuant to typical sales arrangements that prevailed throughout the industry, appellees received disposable surgical supplies valued at $97.50, or a credit for that amount against future purchases of those items from Crocker Fels with each lens purchased from AMO for the HCFA approved reasonable and customary price of $390.00. Crocker Fels was reimbursed in that amount by the lens manufacturer, one of which, in the instant case was AMO. Generally, the cost of the disposable surgical supplies consumed during a surgical cataract implant exceeded $97.50.
 
 
 6
 At no time did defendants' backcharge to Medicare or other HCFA designated health care insurance carrier exceed the HCFA reasonable and customary approved manufacturer's price per IOL, in the instant case, $390.00 per AMO lens.
 
 
 7
 Preliminary to soliciting the participation of the professional medical community targeted for the sales promotion, certain IOL manufacturers sought and received approval of the proposal from the HCFA. In a series of official letters from HCFA "reimbursement specialists", the proposed sales inducement campaign was sanctioned. Scott Levine, a reimbursement specialist for HCFA on December 10, 1985 stated that:
 
 
 8
 The customers of Pharmacia do not violate any HCFA regulation when they purchase a Viscolens (TM) or Viscosurgery Pack, as long as they do not charge HCFA or the beneficiary any more for the Viscolens or the Viscosurgery Pack than they previously charged for the IOL alone. That is, the physician should not charge for the items they received at no additional charge.
 
 
 9
 HCFA issued another similar letter on September 23, 1986, wherein it considered its approval of the suggested IOL inducement sales program as a public policy announcement:
 
 
 10
 [W]e believe that we have an obligation to the public to provide our opinion as to the propriety of certain charging arrangements. We have become aware that many different types of inducements are being used in the IOL supply industry, including the leasing of equipment at below market or otherwise subsidized rates in return for the purchase of IOLs, or the supply with the IOL of other additional items. At this time, we regard all such sales inducements in the same category for reimbursement purposes, that is, as long as the inducement is related to the item, and as long as there is no additional charge to the beneficiary of HCFA for the item, device or service, then there is no issue of reimbursement abuse.
 
 
 11
 In yet another letter, HCFA in addressing the question of free surgical supplies to induce the purchase of IOLs said:
 
 
 12
 To our knowledge, you would not be violating any HCFA reimbursement regulation by marketing the Viscolens (TM)/Viscosurgery (TM) Pack.
 
 
 13
 In addition, in our opinion, customers of Pharmacia would not be violating any HCFA reimbursement regulation by purchasing such a package. However, we would strongly advise any such customers not to charge a beneficiary or HCFA any more for the package than they had previously charged for the IOL alone.
 
 
 14
 Although defendants initiated no inquiry of their own concerning the legality of the sale campaign, it is apparent that HCFA approval of the "bundling arrangement" was circulated throughout the targeted professional medical community by manufacturers' representatives and sales personnel.
 
 
 15
 During the hearing on defendants' Federal Rule of Criminal Procedure 12(b) pretrial motion to dismiss, the district court in assessing the undisputed extrinsic evidence with the Assistant United States Attorneys Fred A. Stine (Stine) and David Grise made the following observations:THE COURT: Technically, the government can't be estopped, but I guess the rules don't call for summary judgment in a criminal case, but if this is your evidence, it would be a directed verdict at the end, and I don't know why I have to sit through two or three weeks while you put on what we know the evidence will be. There doesn't seem to be a dispute of the facts in this case. It's an unusual criminal case in that sense.
 
 
 16
 to which Stine responded:
 
 
 17
 MR. STINE: Therefore, probably no dispute of the facts in terms of the mechanics of the thing and where the money went. There probably aren't.
 
 
 18
 THE COURT: I think you've rendered--put it two ways. I think you rendered the statute ambiguous by the government's condoning its agent to issue these opinions, or to put it another way with these opinions being issued, it's impossible to prove criminal intent.
 
 
 19
 In sum, the district court concluded from the undisputed extrinsic evidence, initially introduced during the court's pretrial hearing addressing the defendants' 12(b) motion to dismiss the indictment, including the HCFA letters, that the sales inducements did not constitute criminal activity in violation of § 1395nn(b)(1)(B), and that the defendants and those similarly situated could not, as a matter of law, have formulated the necessary intent to participate in a criminal act in violation of § 1395nn(b)(1)(B).
 
 
 20
 The assignment of error confronting this appellate review was initially resolved by the United States Supreme Court in Raley v. State of Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959). In that action defendants had been convicted for refusing to answer certain questions before the "Unamerican Activities Commission of the State of Ohio". The defendants had invoked the privilege against self-incrimination after various commission members, including the chairman, erroneously advised them that the enabling legislation extended them the right against self-incrimination. Subsequently, defendants were indicted in the state court for exercising the privilege. They were convicted. The conviction was affirmed by the Supreme Court of Ohio.
 
 
 21
 In reversing the defendants' conviction, the United States Supreme Court concluded that:
 
 
 22
 the judgments of convictions rendered below violate the Due Process Clause of the Fourteenth Amendment.... [H]ere the Chairman of the Commission, who clearly appeared to be the agent of the State in a position to give such assurances, apprised three of the appellants that the privilege in fact existed, and by his behavior toward the fourth obviously gave the same impression.... [H]ere the crime said to have been committed by the appellants, as defined by the State Supreme Court, was simply that of declining to answer any relevant question on the ground of possible self-incrimination. This was because the Court held that the Ohio immunity statute automatically removed any basis for a valid claim of the privilege, which generally exists under Ohio law. Ohio Const., art. I, § 10. Accordingly, any refusal to answer, based on a claim of the privilege, was said to constitute the offense. While there is no suggestion that the Commission had any intent to deceive the appellants, we repeat that to sustain the judgment of the Ohio Supreme Court on such a basis after the Commission had acted as it did would be to sanction the most indefensible sort of entrapment by the State--convicting a citizen for exercising a privilege which the State clearly had told him was available to him. Cf. Sorrells v. United States, 287 U.S. 435, 442, 53 S.Ct. 210, 212, 77 L.Ed. 413. A state may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning of what conduct might transgress them. Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888. Inexplicably contradictory commands in statutes ordaining criminal penalties have, in the same fashion, judicially been denied the force of criminal sanctions. United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200. Here there were more than commands simply vague or even contradictory. There was active misleading.
 
 
 23
 Id., 360 U.S. at 438-39, 79 S.Ct. at 1266. See also United States v. Clark, 546 F.2d 1130, 1135 (5th Cir.1977) (where court reiterated the principles set forth in Raley and United States v. Laub, 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1967) that the government may not actively mislead individuals by authoritative assurances that certain activity is legal and thereafter initiate a prosecution for engaging in the sanctioned activity); United States v. Mann, 517 F.2d 259, 270 (5th Cir.1975); United States v. Lansing, 424 F.2d 225, 226 (9th Cir.1970).
 
 
 24
 The Court reaffirmed its pronouncements in Raley v. State of Ohio, in United States v. Laub, 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1967), where it stated:
 
 
 25
 Ordinarily, citizens may not be punished for actions undertaken in good faith reliance upon authoritative assurance that punishment will not attach. As this Court said in Raley v. State of Ohio, 360 U.S. 423, 438, 79 S.Ct. 1257, 1266, 3 L.Ed.2d 1344, we may not convict "a citizen for exercising a privilege which the State clearly had told him was available to him." As Raley emphasized, criminal sanctions are not supportable if they are to be imposed under "vague and undefined" commands (citing Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939)); or if they are "inexplicably contradictory" (citing United States v. Cardiff, 344 U.S. 174, 73 S.Ct. 189, 98 L.Ed. 200 (1952); and certainly not if the Government's conduct constitutes "active misleading".
 
 
 26
 Id., 385 U.S. at 487, 87 S.Ct. at 581. See also United States v. Frade, 709 F.2d 1387, 1192 (11th Cir.1983) (crimes are not to be created by inference); United States v. Patterson, 664 F.2d 1346, 1348 (9th Cir.1982) (court must construe criminal statute narrowly and in favor of the defendant); United States v. Thomas, 593 F.2d 615, 621 n. 23 (5th Cir.1979) (the court concluded that the Laub decision was based on two factors: first, it was doubtful that the criminal statute authorized the imposition of area restrictions imposed by the Secretary under other statutes; and second, the Secretary had provided authoritative assurance that punishment would not attach).
 
 
 27
 Rule 12 of the Federal Rules of Criminal Procedure and its component parts encourage district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination without trial of the general issues. Moreover, district courts may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact.
 
 
 28
 In the instant case the operative facts, including the HCFA letters, were undisputed and a two or three week trial of the substantive criminal charges would not have assisted the district court or this court in deciding the legal issues joined by the defendant's pretrial motion to dismiss the controversial counts of the indictment. It should be noted that the district court was not limited to the face of the indictment in ruling on the motion to dismiss since Rule 12 vested the court with authority "to determine issues of fact in such a manner as the court deems appropriate." United States v. Jones, 542 F.2d 661, 664 (6th Cir.1976) (quoting Fed.R.Crim.P. 12 advisory committee's note, reprinted in 8 JEREMY C. MOORE et al., MOORE'S FEDERAL PRACTICE p 12.04, at 12-42, 43 (2d ed. 1976)).
 
 
 29
 This circuit has adopted and consistently followed the above pronouncements of law since its decision in United States v. Jones, 542 F.2d 661 (6th Cir.1976). Moreover, in Jones, this circuit stated that "a defense is 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. United States v. Covington, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969)." See also Commonwealth of Kentucky v. Long, 837 F.2d 727, 749-59 (6th Cir.1988) (the court determined that a Rule 12(b) motion was the proper vehicle to assert the defense of immunity under the Supremacy Clause and concluded that Rule 12(b) was written to encourage the making of pretrial motions and directed district courts to dispose of all motions before trial if they are capable of determination without trial of the general issue); United States v. Smith, 866 F.2d 1092, 1097 (9th Cir.1989) (purpose of a Rule 12(b) motion is to conserve judicial resources by facilitating the disposition of cases without trial); United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir.1986) (A district court may make findings of fact necessary to decide the questions of law presented by pretrial motions so long as the court's findings do not invade the province of the jury.).[1]
 
 
 30
 As also noted by the defendants, the United States Supreme Court and several circuit courts have recognized the criminal doctrine of entrapment by estoppel which is based upon fundamental notions of fairness embodied in the Due Process Clause of the Constitution. See, e.g., United States v. Pennsylvania Indus. Chem. Corp., 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); United States v. Smith, 940 F.2d 710 (1st Cir.1991); United States v. Tallmadge, 829 F.2d 767 (9th Cir.1987). To determine the availability of the defense, the court must conclude that (1) a government must have announced that the charged criminal act was legal; (2) the defendant relied on the government announcement; (3) the defendant's reliance was reasonable; and, (4) given the defendant's reliance, the prosecution would be unfair. United States v. Smith, 940 F.2d 710 (1st Cir.1991). It is true that, generally, the identified standards involve factual determinations. However, the instant case fails to present that obstacle. From the undisputed operative facts it is apparent that (1) HCFA and its duly designated representatives declared the sales promotion program, which was the predicate for the indictment, to be legal; (2) the appellees relied upon HCFA's announcement; (3) the defendants' reliance was reasonable; and (4) prosecution for violation of the controversial counts of the indictment would be unfair.
 
 
 31
 It appears that the dissent has failed to grasp the issues joined by this appeal. Contrary to its conclusions, the district court did not dismiss the conspiracy and substantive counts of the indictment here in controversy for failing to state the elements of a criminal offense under 42 U.S.C. § 1395nn(b)(1)(B) nor the sufficiency of the evidence to support the grand jury's findings of probable cause necessary to return an indictment against the defendants.[2]
 
 
 32
 Although the indictment is unartfully drafted, nowhere in the record do the parties or the district court challenge its sufficiency for failing to state the elements of a criminal offense under 42 U.S.C. § 1395nn(b)(1)(B), nor do the parties challenge the sufficiency of the evidence before the grand jury to support its findings of probable cause to return the indictment against the defendants. The district court's dismissal of controversial counts of the indictment was anchored in reasoning entirely different from that hypothecated by the dissent as is apparent from its [the trial court's] opinion:
 
 
 33
 The Court concludes that the statute in question has been rendered ambiguous by numerous opinion letters issued by the government or carriers authorized to act for the government ... which appear to sanction the practice challenged by this indictment ... Accordingly, under these circumstances, the Court holds that the government cannot as a matter of law establish criminal intent beyond a reasonable doubt.
 
 
 34
 J.App. at 44 (emphasis added) (citations omitted).
 
 
 35
 Accordingly, the defendants, having conceded that the indictment has stated a criminal offense under 42 U.S.C. § 1395nn(b)(1)(B), and having waived any challenge to the grand jury's conclusion that probable cause existed to return its indictment against them, assert that the district court correctly concluded from undisputed extrinsic evidence including a series of official letters issued by the government, that their Federal Rule of Criminal Procedure 12(b) pretrial motion to dismiss the indictment was well-taken because the government was, as a matter of law, incapable of proving beyond a reasonable doubt the requisite intent required to convict the appellees of the controversial counts of the indictment which were dismissed with prejudice.
 
 
 36
 Although the dissent disclaims the existence of "language either in the rule [Rule 12(b) ] or in the rule's commentary that would suggest that a district court has the authority, in the face of a pending indictment, to conduct a pre-trial hearing to weigh the evidence and decide whether a trial is in order," it ignores the analytical review of 8 JEREMY C. MOORE, et al., MOORE'S FEDERAL PRACTICE p 12.04, at 12-42, 43 (2d ed. 1976) and pronouncements of the Supreme Court in United States v. Covington, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969), where, in simple language, the Court stated:
 
 
 37
 Federal Rule of Criminal Procedure 12(b)(1) states that: "Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." A defense is thus "capable of determination" if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense. Rule 12(b)(4) allows the District Court in its discretion to postpone determination of the motion to trial, and permits factual hearings prior to trial if necessary to resolve issues of fact peculiar to the motion.
 
 
 38
 This circuit has adopted and applied the Supreme Court directive beginning with United States v. Jones, 542 F.2d 661, 664-65 (6th Cir.1976), and Commonwealth of Kentucky v. Long, 837 F.2d 727, 749-59 (6th Cir.1988).
 
 
 39
 The dissent equally misconstrues the recent decision in United States v. Williams, --- U.S. ----, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). Williams is again totally without application to the instant appeal, either in fact or law. It would appear that the issue, as framed by Justice Scalia's opinion in that case, was
 
 
 40
 whether the district court may dismiss an otherwise valid indictment because the Government failed to disclose to the grand jury "substantial exculpatory evidence" in its possession.
 
 
 41
 Id. at ----, 112 S.Ct. at 1737.
 
 
 42
 The crucial issue confronting the resolution of the Court was the prosecutor's failure to present exculpatory evidence to the grand jury. The Court concluded that imposing the duty of presenting exculpatory evidence within his possession to the grand jury was incompatible with the grand jury system and prosecutorial discretion and authority.
 
 
 43
 In the instant case, the district court concluded from undisputed extrinsic evidence that a Federal Rule of Criminal Procedure 12(b) pretrial motion to dismiss the indictment was well-taken because the government was, as a matter of law, incapable of proving beyond a reasonable doubt the intent required to convict the appellees of the controversial counts of the indictment which were dismissed with prejudice. The instant case joined no issue remotely analogous to the prosecutorial misconduct addressed in Williams.
 
 
 44
 The district court's decision granting the defendants' pretrial motion in the instant case constituted a disposition of a legal issue, namely, the ability of the government to prove intent which was an integral element of the 42 U.S.C. § 1395nn(b)(1)(B) offense charged in a duly returned indictment after the trial court had considered undisputed extrinsic evidence.
 
 
 45
 As reflected in this majority opinion, a 12(b) motion encourages courts to do precisely what the trial court did in the instant case. As observed by precedent in this circuit, Rule 12 of the Federal Rules of Criminal Procedure
 
 
 46
 was written to encourage the making of motions prior to trial. See Notes of the Advisory Committee to the 1975 Amendments to Fed.R.Crim.P. 12 reprinted in 8 J. Moore, Federal Practice p 12.01 at 12-7, 8 (2d ed. 1976) (hereinafter Moore). District courts are directed to dispose of all motions before trial if they are capable of determination before trial if they raise questions of law rather than fact. See United States v. Miller, 491 F.2d 638, 647 (5th Cir.1974). However, Rules 12(e) and (g) clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact. See Moore p 12.04 at 12-[42,43]. Thus, a defense is " 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." United States v. Covington, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969).
 
 
 47
 United States v. Jones, 542 F.2d 661, 664-65 (6th Cir.1976).
 
 
 48
 The trial court, in the case at bar, after the undisputed HCFA letters here in controversy were introduced into evidence during the conduct of the defendants' 12(b) motion to dismiss the indictment, made preliminary findings of fact from which it concluded, as a matter of law in accordance with the direction of Jones, that the government could not prove the required element of intent necessary to support a conviction of 42 U.S.C. § 1395nn(b)(1)(B).
 
 
 49
 Accordingly, for the reasons herein, including those that address the violation of appellees' due process constitutional infringements, the district court's disposition is AFFIRMED.
 
 
 50
 BOYCE F. MARTIN, Jr., Circuit Judge, dissenting.
 
 
 51
 If the majority opinion had any factual, logical, or legal support, then I would consider joining the opinion. I must dissent, however, because I feel the opinion lacks such support. The majority's decision has knowingly or unknowingly endorsed a criminal justice system that allows a defendant to "try" the merits of a criminal case in a pre-trial hearing before a judge. Moreover, the decision has boldly eviscerated the role that the grand jury has traditionally played in our criminal justice system.
 
 
 52
 History demonstrates that an extremely delicate balance exists between a grand jury and a trial court. The grand jury's chief duty is to investigate possible criminal wrongdoing and to make a determination whether, more likely than not, a crime has been committed. When a grand jury finds there is probable cause to believe that a crime has been committed, it issues an indictment charging a defendant with the crime. Once the grand jury has returned a true bill, it is generally the trial court's duty to try the defendant and determine beyond a reasonable doubt whether the defendant has committed the charged crime. It is not the duty of the grand jury to declare that a defendant has, in fact, committed a crime, and the trial court generally may not enter a judgment of acquittal before trial based on the lack of evidence.
 
 
 53
 The delicate balance that exists between a grand jury and a trial court is nicely demonstrated in United States v. Williams, --- U.S. ----, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). In Williams, a federal grand jury charged the defendant with making false statements for the purpose of influencing the action of a federally-insured financial institution. Id. at ---- - ----, 112 S.Ct. at 1737-38. The trial court dismissed the indictment because it found that (1) at the grand jury proceedings the government withheld evidence that was "relevant to an essential element of the crime charged"; and (2) the withheld evidence created a reasonable doubt of the defendant's guilt. Id. at ----, 112 S.Ct. at 1738. Although the Tenth Circuit affirmed the district court's order, the Supreme Court disagreed. In reversing, the Court held that even under the federal courts' supervisory power, a federal court may not dismiss a facially valid indictment simply because the government had failed to present substantial exculpatory evidence to the grand jury. Id. at ---- - ----, 112 S.Ct. at 1736. In other words, once a grand jury has issued a facially valid indictment charging the defendant with a crime, the trial court should conduct a trial to determine whether the defendant did, in fact, commit the crime. At trial, if the government fails to offer sufficient evidence of guilt, the court may then enter a judgment of acquittal.
 
 
 54
 Although the facts of Williams are different from the facts of this case, the rationale behind the Williams decision, namely that a trial court should be extraordinarily reluctant to conduct a pre-trial examination of the evidence to determine whether a trial is warranted, is applicable to this case. The court's reluctance emanates from the fact that such a pre-trial examination would ignore the boundary that exists between the role of the grand jury and the role of a trial court. In cases that do call for pre-trial disposition of motions, Fed.R.Crim.P. 12 covers the situation very well:
 
 
 55
 (b) Pretrial Motions. Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion....
 
 
 56
 ....
 
 
 57
 (e) Ruling on Motion. A motion before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after the verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.
 
 
 58
 Fed.R.Crim.P. 12. In discussing Rule 12, this court has stated:
 
 
 59
 The rule was written to encourage the making of motions prior to trial. District courts are directed to dispose of all motions before trial if they are capable of determination without trial of the general issue. Generally, motions are capable of determination before trial if they raise questions of law rather than questions of fact. However, Rules 12(e) and 12(g) clearly envision that a district court may make preliminary findings of fact necessary to decide the questions of law presented by [a] pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact. Thus, a defense is " 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense."
 
 
 60
 United States v. Jones, 542 F.2d 661, 664-65 (6th Cir.1976) (quoting United States v. Covington, 395 U.S. 57, 60, 89 S.Ct. 1559, 1561, 23 L.Ed.2d 94 (1969)) (citations and footnote omitted).
 
 
 61
 I found no language either in the rule or in the rule's commentary that would suggest that a district court has the authority, in the face of a pending indictment, to conduct a pre-trial hearing to weigh the evidence and decide whether a trial is in order. In the case before us, however, the district court has done just that. The trial court based its dismissal on the existence of several letters written by the government or its agents to parties other than Levin; there apparently is no evidence that Levin saw these letters before the grand jury indicted him. Notwithstanding the language used by the district court or the majority's characterization, I believe the district court's pre-trial decision that the government would not be able to establish the requisite criminal intent at trial was, in essence, a decision that the indictment was based on insufficient or inadequate evidence. A defendant, however, may not challenge an indictment on the ground that it is not supported by sufficient evidence. In United States v. Short, 671 F.2d 178, 183 (6th Cir.1982), we forcefully stated that "[w]hen a body of citizens, properly chosen and constituted as a grand jury, finds probable cause to believe that a crime has been committed within its jurisdiction, that finding is sufficient to require a trial." See also United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974) ("[A]n indictment valid on its face is not subject to challenge on the ground that the grand jury acted on inadequate or incompetent evidence...."); United States v. Adamo, 742 F.2d 927, 936 (6th Cir.1984) ("An indictment returned by a legally constituted and unbiased grand jury ... if valid on its face, is enough to call for trial of the charge on the merits.") (quoting Short, 671 F.2d at 182), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); United States v. Warner, 690 F.2d 545, 555 (6th Cir.1982) (relying on Calandra to reject defendant's argument that district court should have dismissed an indictment count that was based on insufficient evidence).
 
 
 62
 In this case, the only conclusion I can reach is that the district court improperly dismissed the indictment. There is no evidence that the grand jury was illegally constituted or that the indictment was invalid on its face. The real crux of the district court's decision is a belief that the evidence shows the defendants did not commit any crime. One may select various characterizations for the court's action, but in my mind the substance of the court's action was a dismissal of the indictment because of insufficient evidence. This was an improper action on the part of the district court.
 
 
 63
 In support of its decision to uphold the district court's decision, the majority relies on the doctrine of entrapment by estoppel. Several courts have recognized the defense of entrapment by estoppel but never on facts such as those before this court. See, e.g., United States v. Pennsylvania Indus. Chem. Corp., 411 U.S. 655, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); United States v. Smith, 940 F.2d 710 (1st Cir.1991); United States v. Tallmadge, 829 F.2d 767 (9th Cir.1987). The doctrine of entrapment by estoppel is based on the fundamental notions of fairness embodied in the Due Process Clause. Smith, 940 F.2d at 714; United States v. Austin, 915 F.2d 363, 366 (8th Cir.1990) (quoting United States v. Bradey, 710 F.Supp. 290, 295 (D.Colo.1989)), cert. denied, --- U.S. ----, 111 S.Ct. 1626, 113 L.Ed.2d 722 (1991).
 
 
 64
 The defense of entrapment by estoppel exists if (1) a government official advised the defendant that an act was legal; (2) the defendant relied on the official's advice; (3) the defendant's reliance was reasonable; and (4) given the defendant's reliance, prosecution would be unfair. Smith, 940 F.2d at 715. Obviously, in order to determine whether the defense of entrapment by estoppel exists, a trier of fact must conduct a factually specific inquiry. Thus, assuming that this court recognizes the defense, the real question is whether the district court had the authority to decide the merits of the defense in a pre-trial hearing.
 
 
 65
 Although my research reveals no case law directly on point, in related areas the courts have clearly discouraged the pre-trial disposition of motions to dismiss that are based on defenses requiring fact finding. In United States v. Knox, 396 U.S. 77, 78-79, 90 S.Ct. 363, 364, 24 L.Ed.2d 275 (1969), the district court had dismissed an indictment charging the defendant with knowingly and willfully submitting false tax forms. On appeal, the defendant asserted that the federal tax statutes compelled him to submit the false statements because the statutes provided for penalties if he did not file the forms. Id. at 81, 90 S.Ct. at 366. In reversing the dismissal of the indictment, the Supreme Court stated:
 
 
 66
 [T]he question whether Knox's predicament contains the seeds of a "duress" defense, or perhaps whether his false statement was not made "willfully" as required by § 1001, is one that must be determined initially at trial.
 
 
 67
 Id. at 83, 90 S.Ct. at 367. The Court also noted that Fed.R.Crim.P. 12 "indicates that evidentiary questions of this type should not be determined on such a motion." Id. at 83 n. 7, 90 S.Ct. at 367 n. 7. See also United States v. Fadel, 844 F.2d 1425, 1431 (10th Cir.1988) (holding that because entrapment focuses on the defendant's state of mind, a pre-trial motion for such a defense is seldom appropriate).
 
 
 68
 In this case, contrary to the majority's assertion, the facts necessary to resolve the entrapment by estoppel defense were not undisputed. The majority quotes a colloquy between the district court and the government's attorney and asserts that in this colloquy the government's attorney conceded that the relevant facts in this case were undisputed. If you review the colloquy, however, you will discover that the attorney for the United States conceded only that the facts surrounding the mechanics of Levin's kickback scheme were undisputed; there was no concession on the part of the government that any other facts were undisputed. Thus, by implication the following facts were and are still in dispute with respect to the entrapment by estoppel defense: (1) whether an agent of the United States told Levin, as opposed to any other individuals, that the conduct at issue was allowed under the statute; (2) whether Levin actually relied on the government's letters; and (3) whether Levin's reliance was reasonable especially in light of the fact that there was abundant government material that stated that the particular type of conduct that Levin engaged in was, in fact, illegal. These disputed facts go to the heart of the entrapment by estoppel defense and, thus, involve the ultimate determination of guilt or innocence. When the district court dismissed the indictment based on the letters issued by the government's representatives, the court unacceptably invaded the jury's province.
 
 
 69
 Although I, too, am confused and amazed by the existence of the letters, this still does serve as a sufficient basis for the pre-trial dismissal of the section 1395nn counts. The letters were possibly admissible at trial to show a lack of criminal intent or to establish the defense of entrapment by estoppel. If the defendants had used the letters at trial to create reasonable doubt about the existence of criminal intent or to establish entrapment by estoppel, then the district court could have directed a verdict of acquittal. Alternatively, if the government had failed to meet its burden of proof at trial, then the court could have also chosen to direct a verdict of acquittal. One may not like the procedures that courts have to go through to reach a particular result, but our criminal justice system requires us to follow some procedures. Today, the majority may believe that it is helping "innocent" defendants by allowing them to avoid the rigors of trial; however, what seems like a noble gesture may, in the end, hurt more than help. I only hope that today's decision does not create in every criminal case a pre-trial hearing whose sole purpose is to examine the evidence and determine whether there should be a trial. If this occurs, the time necessary for pre-trial hearings, combined with the time necessary for sentencing, will leave no time for the actual trials.
 
 
 70
 For the foregoing reasons, I dissent.
 
 
 
 [1]
 In this case, as previously indicated, the district court arrived at its disposition in accordance with the dictates of Rule 12 as is apparent from its statement after assessing the undisputed evidence with the Assistant United States Attorney:
 Technically the government can't be estopped, but I guess the rules don't call for summary judgment in a criminal case, but if this is your evidence, it would be a directed verdict at the end, and I don't know why I have to sit through two or three weeks while you put on what we know the evidence will be. There doesn't seem to be a dispute of the facts in this case. It's an unusual criminal case in that sense.
 MR. STINE: Therefore probably no dispute of the facts in terms of the mechanics of the thing and where the money went. There probably aren't.
 See also Commonwealth of Kentucky v. Long, 837 F.2d 727, 749-59 (6th Cir.1988); United States v. Smith, 866 F.2d 1092, 1097 (9th Cir.1989); United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir.), cert. denied, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986); United States v. Korn, 557 F.2d 1089, 1090 (5th Cir.1977).
 
 
 [2]
 The dissent's misconception is reflected in its erroneous restatement of the trial court's decision to read "the district court's pretrial decision that the government would not be able to establish the requisite criminal intent was, in essence, a decision that the indictment was based upon insufficient or inadequate evidence [presented to the grand jury]." The error is aggravated by resolution of this nonexistent controversy which is totally foreign to this appellate review. It is conceded by the parties that "a defendant may not challenge an indictment on the ground that it is not supported by sufficient evidence [before the grand jury]," as observed by the dissent. United States v. Short, 671 F.2d 178 (6th Cir.), cert. denied, 457 U.S. 1119, 102 S.Ct. 2932, 73 L.Ed.2d 1332 (1982); United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974); United States v. Adamo, 742 F.2d 927, 936 (6th Cir.1984) (quoting Short, 671 F.2d at 182), cert. denied sub nom. Freeman v. United States, 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985); United States v. Warner, 690 F.2d 545, 555 (6th Cir.1982); United States v. King, 581 F.2d 800, 802 (10th Cir.1978) (during pretrial proceedings, a defendant may not properly challenge an indictment on the ground that it is not supported by adequate evidence); United States v. Mann, 517 F.2d 259, 267 (5th Cir.1975), cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). If the error seeking resolution by this appellate review had been assigned by the parties as framed in the dissent and/or if it had either direct or indirect roots in the record, the dissent might have some plausible merit. Unfortunately, as a result of its misconception of the issue seeking review, the dissent has erroneously disposed of a nonexistent assignment of error which is not embraced by the record of these proceedings