UNITED STATES of America, Plaintiff,

v.

Don Billy YATES, Jr., Defendant.

Criminal Action No. 95–72.

United States District Court,
E.D. Kentucky,
Lexington.

Dec. 13, 1995.

R. Burl McCoy, McCoy, Baker & West, Lexington, KY, for defendant.

Thomas L. Self, U.S. Attorney's Office, Lexington, KY, for U.S.

## OPINION AND ORDER

FORESTER, District Judge.

This matter is before the Court upon the motion of the defendant, Don Billy Yates, to dismiss. This matter has been fully briefed and is ripe for review.

## I. FACTS

Yates was indicted by a federal grand jury on November 2, 1995 on four counts of criminal fraud in violation of various provisions of 18 U.S.C. § 1029. Specifically, count one of the indictment charges that Yates, "knowingly and with intent to defraud, did produce, use and traffic in a counterfeit access device, which conduct affected interstate commerce," in violation of § 1029(a)(1) and (c)(1). Count two of the indictment charges that Yates "knowingly and with intent to defraud, did have control, custody, and possession of device-making equipment, which conduct affected interstate commerce," in violation of § 1029(a)(4) and (c)(1). Count three of the indictment charges that Yates "knowingly and with intent to defraud, did produce, traffic in, have control, custody and possession of a telecommunications instrument that had been modified and altered to obtain unauthorized use of telecommunications services, which conduct affected interstate commerce," in violation of § 1029(a)(5) and (c)(1). Finally, count four of the indictment charges that Yates "knowingly and with intent to defraud, did use, have control, custody and possession of hardware and software used for altering and modifying telecommunications instruments to obtain unauthorized access to telecommunications services, which conduct affected interstate commerce," in violation of § 1029(a)(6)(B) and (c)(1). Each count alleges that the offense occurred on or about September 18, 1995. At the arraignment on November 9, 1995, Yates pled not guilty to each count.

On November 20, 1995, Yates filed two motions to dismiss the indictment. In his first motion to dismiss, Yates argues that the indictment should be dismissed as multiplicitous, or alternatively, that the United States should elect under which count of the indictment it will proceed at trial. In his second motion to dismiss, Yates argues that the indictment fails to charge him with engaging in an illegal activity. A hearing on the motions was held on December 1, 1995. The Court denied Yates' motion to dismiss the indictment as multiplicitous. However, the Court held that counts 2 and 4 of the indictment are duplicitous and ordered the United States to elect between counts 2 and 4 of the indictment. Yates' motion to dismiss on the grounds that the indictment fails to charge an illegal activity was taken under advisement by the Court.

## II. YATES' MOTION TO DISMISS FOR FAILURE TO CHARGE AN ILLEGAL ACTIVITY

The issue in Yates' motion to dismiss is whether a "cloned" cellular telephone—i.e., one with identification numbers identical to another existing legitimate unit—falls within the ambit of § 1029. Based on representation from counsel and independent research, this appears to be an issue of first impression.

In order to determine whether the indictment charges Yates with an illegal activity, an understanding of the cellular telephone industry is imperative. Cellular telephone service is available from commercially owned and operated communications networks and is based upon a system of individual cellular telephone units having wireless radio transmission capabilities and which operate within a series of geographic "cells" served by a radio transmitter. Cellular telephones are typically programmed with two identifying code numbers, commonly referred to as the electronic serial number, "ESN," and the mobile identification number, "MIN." The ESN is a unique numerical code embedded in each cellular telephone by the manufacturer identifying that particular instrument. The MIN is a ten-digit numerical telephone number (area code + seven-digit telephone number) assigned to each cellular telephone customer. For identification purposes, both numbers are transmitted to the cellular system by the cellular telephone unit at the time a call is initiated. As the user moves from

one cell to another, transmission of telephone calls is automatically shifted from one transmitter to the other, thus maintaining a consistent signal quality.

Cases construing § 1029 as it applies to the cellular telephone industry have involved "tumbling" cellular telephones. *See United States v. Brady,* 13 F.3d 334 (10th Cir.1993); *United States v. Bailey,* 41 F.3d 413 (9th Cir.), *cert. denied,* ——— U.S. ———, 115 S.Ct. 2563, 132 L.Ed.2d 815 (1994); *United States v. Ashe,* 47 F.3d 770 (6th Cir.1995). A "tumbling" cellular telephone is one which is capable of randomly changing either the ESN or MIN to enable the user to obtain a "free ride" through the cellular telephone system by avoiding or defeating access or billing to an individual customer account. Tumbling cellular telephones take advantage of the "roam" feature provided by cellular carriers. Cellular telephone customers may "roam," that is, place calls from a foreign geographic cell other than the geographic cell owned and operated by the carrier with whom the customer has an account. This allows customers to place a local or long distance call from anywhere in the United States while outside the geographic area serviced by his or her home carrier. When a roamer places a call from a foreign geographical service area, the cellular telephone automatically transmits the caller's assigned ESN and MIN. In processing a roamer call, a foreign carrier immediately recognizes the MIN as belonging to another existing carrier. To provide effective customer service, roamer calls are, by internetwork agreement, practice and procedure, immediately transmitted by a foreign carrier before validation of the identifying ESN and MIN combination has been completed by a central data bank clearing house located in San Angelo, Texas. A time lag occurs while its computers seek to match the automatically transmitted identifying ESN and MIN with an existing home carrier-subscriber combination recorded in its data bank of national internetwork listings. In the absence of a valid match, all subsequent calls using the same ESN and MIN will be rejected. Although service charges resulting from unmatched ESN and MIN combinations are listed together with all pertinent information related to the call in the foreign carrier's billing computer, the illicit roaming customer cannot be identified. As a result, the charges cannot be collected from the user of a tumbling cellular telephone and the cellular carrier absorbs the cost of the call.

In *Brady,* the Tenth Circuit Court of Appeals considered whether tumbling cellular telephones are violative of § 1029. *Brady,* 13 F.3d at 338. The Tenth Circuit relied on *United States v. McNutt,* 908 F.2d 561 (10th Cir.1990), in which the court held that cloned electronic addresses on satellite television descrambler modules were not "access devices" within the meaning of § 1029. *Id.* at 338–39. Even though the operators of satellite television services suffered economic losses from the revenue forgone due to the use of cloned descrambler modules, the court determined that there was no violation of § 1029 because use of such modules did not "debit legitimate subscriber's accounts[, and] no additional charges accrued as a result of the unauthorized use." *McNutt,* 908 F.2d at 563–64. In other words, the court in *McNutt* held that "economic losses were not enough under § 1029; instead, the government must be able to connect actual losses to distinct transactions reflected in the company's accounting records." *Brady,* 13 F.3d at 338. Because calls made from a tumbling cellular telephone do not "debit legitimate subscriber's accounts" or "trigger the creation and maintenance of a formal record of credits and debits," the court in *Brady* held that a tumbling cellular telephone is not an access device within the meaning of § 1029. *Id.* at 339.

In addressing the identical issue in *United States v. Ashe,* 47 F.3d 770 (6th Cir.1995), the Sixth Circuit Court of Appeals rejected the Tenth Circuit's interpretation of § 1029. In *Ashe,* the defendant challenged his conviction under § 1029 for producing and possessing a tumbling cellular telephone. In rejecting *Brady,* the court noted that "[i]n 1992, the losses charged to cellular telephone carriers resulting from 'free riding' amounted to over $100 million." *Id.* at 774. As a result, the court held that "invasion of an identifiable customer's account is not a necessary element of proof to support a conviction under [§ 1029]." *Id.* at 774. Similarly, in *United*

*States v. Bailey,* 41 F.3d 413 (9th Cir.1994), the Ninth Circuit Court of Appeals held that tumbling cellular telephones are access devices within the ambit of § 1029.

Unlike *Brady, Ashe,* and *Bailey,* Yates is charged with use, possession and trafficking of a cloned cellular telephone and cloning equipment. Cloning involves the programming of a cellular telephone so that the ESN and MIN combination is identical to a legitimate customer's account in order to obtain free telephone service. By obtaining a cloned telephone, a cellular customer avoids an activation fee and a monthly maintenance fee charged by the cellular carrier.

The facts in this case are undisputed. In April 1995, the Secret Service executed a search warrant at a company that was selling or distributing "black boxes" that are used to clone MINs and ESNs. The search yielded a list of customers, including Yates, who had purchased at least one black box. During the same time, the Secret Service also received information from a local cellular telephone company that Yates was using a black box to clone cellular telephones. Basically, Yates' service involved providing customers with an "extension phone" so that they could have two cellular telephones with the same number, while paying the activation charge and maintenance fee for only one cellular telephone. Calls made from either cellular telephone, however, appear on the customer's bill. Yates charged $150 for his cloning service.

On September 18, 1995, Special Agent James Burch of the United States Secret Service obtained two cellular telephones, one of which was programmed with an authorized ESN and MIN, and one which was blank. Burch then contacted and arranged to meet with Yates to obtain a cloned cellular telephone. At their meeting, Yates programmed the ESN and MIN of the legitimate cellular telephone into the blank cellular telephone. Both Yates and Burch made test calls from the cloned cellular telephone. Yates was subsequently arrested and indicted for violating § 1029.

In support of his motion to dismiss, Yates argues that the Federal Communications Commission, the federal agency charged with regulating the telecommunications industry, has consistently held that telephone numbers are not the property of the carrier but are instead a public resource. *See In re The Matter Of Administration Of North American Numbering Plan,* FCC 95–283; *In re The Matter Of The Need To Promote Competition And Efficient Use Of Spectrum For Radio Common Carrier Service,* FCC 86–85 (1986). As a result, Yates contends that the FCC's ruling caused citizens, such as himself, to believe that the activity charged in the indictment is not illegal. Yates contends that *United States v. Levin,* 973 F.2d 463 (6th Cir.1992), is analogous to the present case. In *Levin,* the Sixth Circuit Court of Appeals affirmed the dismissal of an indictment charging an opthamologist with Medicaid fraud for billing practices which the Healthcare Finance Administration had implied were legal. Based on *Levin* and the ruling by the FCC, Yates contends that he cannot be charged with engaging in a fraudulent activity where that fraudulent activity is wholly dependent upon ownership of a cellular telephone number by a telephone carrier.

In further support of his motion to dismiss, Yates argues that because the telephone carrier will continue to be able to bill its customers for all calls made on the extension telephone, they are not damaged by the use of the extension telephone. Moreover, Yates contends that the telephone companies have no right to profit based on the customer's use of a particular telephone number since these numbers are public resources. As a result, Yates contends that the indictment does not charge illegal activity and must be dismissed.

Yates' argument directly contradicts the legislative history of § 1029(a). In 1994, conceivably in response to the Tenth Circuit Court of Appeals' ruling in *Brady,* Congress amended § 1029(a) to specifically criminalize Yates' conduct. In passing the amendment, Congress stated:

> This section amends the counterfeit access device law to criminalize the use of cellular phones that are altered, or "cloned," to allow free riding on the cellular phone system. Specifically, this section prohibits the use of an altered telecommunications instrument, or a scanning receiver, hard-

ware or software, to obtain unauthorized access to telecommunications services for the purpose of defrauding the carrier. A scanning receiver is defined as a device used to intercept illegally wire, oral or electronic communications. The penalty for violating this new section is imprisonment for up to fifteen years and a fine of the greater of the $50,000 or twice the value obtained by the offense. House Report H.R. No. 103–827(I), U.S.Code Cong. & Admin.News 1976, pp. 3489, 3511.

Clearly, Yates' conduct involved the "use of an altered telecommunications instrument ... to obtain access to telecommunications services for the purpose of defrauding the carrier." Moreover, Yates' argument that the cellular carriers are not damaged by use of the extension telephone is erroneous. By cloning cellular telephones to enable users to have an extension phone, the cellular carriers are defrauded of the activation fee and the monthly service fee they charge for each cellular phone. Therefore, Yates' motion to dismiss will be denied.

## III.  CONCLUSION

Accordingly, the Court, being sufficiently advised, hereby ORDERS that Yates' motion to dismiss [docket entry 19] is DENIED.