UNITED STATES of America, Plaintiff,

v.

Erickson ALVELO–RAMOS, Defendant.

Criminal No. 96–206 (JAF).

United States District Court,
D.   Puerto Rico.

March 6, 1997.

Jose Ruiz–Santiago, Asst. U.S. Atty., Guillermo Gil, U.S. Attorney, D. of P.R., San Juan, PR, for Plaintiff.

Laura Maldonado, Asst. Federal Public Defender, Carlos Vazquez–Alvarez, Asst. Federal Public Defender, Lucien Campbell, Acting Federal Public Defender, D. of P.R., San Juan, PR, for Defendant.

## AMENDED ORDER

FUSTE, District Judge.

The court addresses the defendant's motion under Fed.R.Crim.P. 29 for judgment of acquittal.

Erickson Alvelo–Ramos is charged in a two-count indictment for knowingly and with intent to defraud possessing, on July 3, 1996, cloned cellular telephones which had been altered to obtain unauthorized use of telecommunication services, and with knowingly and with intent to defraud possessing, in late 1994, hardware used for altering telecommunication instruments to obtain unauthorized access to telecommunication services under 18 U.S.C. § 1029(a)(5) and (6)(B). The quoted statutes outlaw, among other things, cellular telephone fraud if the offense affects interstate or foreign commerce, 18 U.S.C. § 1029(a)(7).

In this case, two cloned cellular telephones were found in defendant's home. These phones, according to defendant's Rule 29 motion, were not used for calls outside Puerto Rico. One of the cloned telephones had previously been used in 1995 to make interstate or foreign calls, but the defendant claims that the 1995 illegal use is too remote to be considered part of the conduct charged in Count One.

The defendant argues that if the cloned telephones were used to only make intra-island or local calls, interstate commerce has not been affected, thus preventing the application of federal law to this case.

For the sake of the Rule 29 analysis, we assume that the cloned phones were used only for intra-island calls.

The issue for this court to decide centers on whether a cellular phone which has not been used to call outside the state is, nonetheless, in the scope of interstate commerce or whether its use affects interstate commerce. The relative novelty of this issue does not obscure this court's ability to determine the viability of the government's case.

We find the cloned cellular phones to be necessarily part of interstate commerce for two principal reasons. First, and least importantly, the telephones themselves were manufactured in another state. Second, the very nature of a telephone is that it may be used for interstate or international connections. This is especially apt for cellular phones, which not only can call outside of the state and country, but can initiate those calls from outside the original state of the telephone. *See United States v. Yates,* 914 F.Supp. 152 (E.D.Ky.1995) (holding cloned cellular telephones to fall within the ambit of section 1029, as a violation of interstate commerce). The very circuitry of the nation's cellular telephone system knows no state boundaries. The fact that the defendant did not use the phone to its full interstate capability does not imply the theft was not one of interstate magnitude. Contrast the present case with the hypothetical theft of a cellular phone whose number was restricted to local calls. Here, defendant faced no such restrictions and could have not only called California, but China as well. This demonstrates the criminal nature of the instant activity.

The use of scanners or ESN Readers capable of accessing cellular telephone carriers' accounts by transmitting counterfeit ESN and MIN signals to illegally penetrate the airwaves, in order to steal legitimate accounts' air time, has been found to constitute the "theft of 'air time' from the individual cellular telephone carriers comprising the national inter-cellular telephone network of companies that are engaged in the commerce of providing cellular telephone services to subscribers, and is, accordingly, in violation of 18 U.S.C. § 1029." *United States v. Ashe,* 47 F.3d 770, 774 (6th Cir.1995) (citing cases involving the established mode of interstate commercial theft, stolen credit cards).

Indeed, the U.S. Congressional legislative history specifically points to the outlawing of all cloned cellular phones as the purpose of the statute. House Report, H.R. No. 103–827(I), U.S.Code Cong. & Admin. News 1994, pp. 3489, 3511, *cited* in *Yates,* 914 F.Supp. at 155–56.

■ Defendant also argues that the phraseology of "affecting commerce" that is used in the case law regarding illegal gun possession, differs sharply from the phrase employed in 18 U.S.C. § 1029, "affects interstate or foreign commerce." Defendant argues that the latter language, since it is more specific, requires a higher threshold of proof of interstate activity.

No federal case law directs us to this alleged distinction, nor does any intimation of such a distinction exist. We briefly address the cases cited by defendant. In the only First Circuit case, *United States v. Smith,* 101 F.3d 202, 215 (1st Cir.1996), the court interpreted the firearm statute as requiring the government to prove that possession of the firearm was "in or affecting commerce," pursuant to 18 U.S.C. § 922(g)(1). The First Circuit explains that the specific jurisdictional element insures a case-by-case inquiry as to whether the firearm possession in question affects interstate commerce. However, the government need only prove a minimal nexus to interstate commerce, according to the court. *Id. See also United States v. Blais,* 98 F.3d 647, 650 (1st Cir.1996).

Defendant fruitlessly attempts to contrast this standard to that of the instant statute, which requires the cellular phone "affect[ ] interstate or foreign commerce." However, federal jurisprudence contains no such distinction. Indeed, another case cited by defendant bolsters the government's position: The federal arson statute, as interpreted by the court in *United States v. Hicks,* 106 F.3d 187 (7th Cir.1997), entails the establishment of "a minimal connection between the property at issue and some aspect of interstate commerce." *Id.* at 190.

A closer parallel to cloned cellular telephones is credit card theft. In one such

case, the fact that the credit cards had out-of-state addresses printed on them was in itself sufficient to demonstrate that the credit cards were in interstate commerce for purposes of section 1029(a). *United States v. Bolton,* 68 F.3d 396, 400 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996). That requirement is undeniably *de minimus,* a far cry from the stricter standard requested by defendant. *See also United States v. Rushdan,* 870 F.2d 1509, 1514 (9th Cir.1989) (possession of out-of-state credit card account numbers is an offense affecting interstate or foreign commerce under § 1029(a)).

The application of the minimal test respects Congressional authority to legislate against crimes that might impact any interstate commerce. The restriction on such authority is where the legislation "seeks to intrude upon an area of traditional state concern." *United States v. Lopez,* 514 U.S. 549, ——, 115 S.Ct. 1624, 1640, 131 L.Ed.2d 626 (1995), *cited in United States v. Rybar,* 103 F.3d 273 (3rd Cir.1996). No court in this nation has found the linguistic distinction between "affecting commerce" and "affects interstate or foreign commerce" to have any legal import whatsoever. This court is not in the position to sua sponte proffer a constitutional argument not appearing in United States jurisprudence, as requested by defendant.

Rather, the case law in not only gun-possession cases, but in arson, credit card, and, indeed, cellular phone fraud cases, point to the appropriate requirement of minimal proof of an interstate commercial connection. Given the connection between individual cellular telephones and "the national inter-cellular telephone network of companies," *United States v. Ashe,* 47 F.3d 770, 774 (6th Cir. 1995), reason dictates that the government's burden of proving a connection to interstate commerce in a cellular telephone fraud case should be minimal, as we have found it to be.

In conclusion, the notion that the fact that these cloned cellular phones were only used for intra-state calls does not lift defendant out of the requirements of the accused crime and the standard behind this determination appropriately requires a minimal effect on interstate or foreign commerce. Therefore, defendant's motion for judgment of acquittal is **DENIED.**

**IT IS SO ORDERED.**