32 F.3d 569
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard Michael VILLINES, Defendant-Appellant.
 No. 93-6223.
 United States Court of Appeals, Sixth Circuit.
 July 19, 1994.
 
 Before: JONES, BOGGS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 After Leonard Michael Villines was convicted of bank fraud, he failed to appear in court after the district court orally sentenced him but later scheduled another sentencing hearing. When he was apprehended two years later, he was charged with failure to appear, 18 U.S.C. Sec. 3146. The district court sentenced him pursuant to USSG Sec. 2J1.6(a)(1), failure to appear for service of sentence, rather than Sec. 2J1.6(a)(2), failure to appear for other court matters. Villines appeals his sentence, contending that he failed to appear for a continuation of sentencing, which falls under the more lenient provisions of Sec. 2J1.6(a)(2). Because the district court had already imposed an oral sentence, thus making Villines's decision to abscond the equivalent of failure to report for sentence, we affirm.
 
 
 2
 * Villines was convicted of bank fraud in August 1990. After the jury returned its verdict, the district court allowed Villines to remain free on bond until his sentencing hearing. The court set an October date for sentencing and Villines appeared at that hearing. The court sentenced Villines to twenty-one months of imprisonment, two years of supervised release, and assessed a fine of $5,000. Based on the pre-sentencing report's ("PSR") finding that Villines had approximately $90,000 worth of gold, the court also imposed an additional fine of $1,400 per month to cover the cost of Villines's incarceration. The district court allowed Villines to surrender voluntarily to the FBI, but did not set a date for surrender at that time.
 
 
 3
 Soon after the initial hearing, the district court decided that it had committed a technical error in sentencing Villines. The judge believed that USSG Sec. 5E1.2(i) (Fines for Individual Defendants) required him to set a sum certain as an additional fine rather than a monthly payment for an uncertain amount of time. Consequently, the district court, sua sponte, scheduled a "continuation of sentencing hearing" for October 23, 1990. Villines did not appear and his counsel requested a continuance. The court re-set the hearing date for October 25; Villines did not appear for that hearing either.
 
 
 4
 Villines remained at large for over two years. He was finally arrested in Portland, Maine in December 1992 and pleaded guilty to the charge of failure to appear in court after being released on bond or on his own recognizance, 18 U.S.C. Sec. 3146. The PSR concluded that Villines's sentence should be based on USSG Sec. 2J1.6(a)(2),[1] failure to report for court proceedings. The PSR assigned a base offense level of 6 and increased the level by 6 for the specific offense characteristics, pursuant to Sec. 2J1.6(b)(2)(B).[2] The PSR then decreased the offense level by 2 for acceptance of responsibility, leaving a total offense level of 10. The PSR assigned a criminal history category of I.
 
 
 5
 The PSR also noted that USSG Sec. 5G1.3(c),[3] which requires a court to impose a consecutive sentence to achieve a reasonable incremental punishment for committing an additional offense, was applicable to Villines's case. The PSR, however, believed that Villines's sentence range was limited by Sec. 5G1.2, which specifies the procedures for determining the "total punishment" when sentences for different crimes are imposed at the same time. The PSR determined that Villines's sentence range was limited to 24-30 months for the bank fraud case; the PSR, relying on Sec. 5G1.2(d),[4] concluded that since the court had sentenced Villines to 21 months for the bank fraud, the maximum sentence for the failure to appear charge was a nine-month consecutive sentence.
 
 
 6
 The district court disagreed with the PSR's recommendations. It found that Sec. 2J1.6(a)(1), failure to report for service of sentence, applied to Villines's case. The court concluded that when Villines did not appear for the "continuation of sentencing" hearing, he had, in effect, failed to appear for service of his sentence. The court also found that Sec. 5G1.3(a), which requires the court to impose a consecutive sentence if the violation occurred after sentencing but before commencement of the sentence, applied to Villines. Finally, the court determined that Villines's total offense level was 9 and his criminal history category was II. The sentence range was thus 6-12 months; the district court sentenced Villines to a 12-month term to be served consecutively to the previously imposed 21-month term for bank fraud.
 
 
 7
 Villines made timely objections to the court's sentence, which the court denied. He then filed this appeal.
 
 II
 
 8
 Villines's first argument is that the district court erred in using USSG Sec. 2J1.6(a)(2) to sentence him. This section of the Guidelines provides that the base offense level for a defendant who failed "to report for service of sentence" is 11. Villines contends that the court should have sentenced him pursuant to 2J1.6(a)(2), which provides that a defendant who "otherwise" fails to appear for a court proceeding has a base offense level of 6. This court reviews de novo the application of the Guidelines. United States v. Hicks, 4 F.3d 1358, 1360 (6th Cir.1993).
 
 
 9
 Villines argues that since the district court had not signed the 1990 sentence and judgment order, he had not technically been sentenced. Villines concludes that since he had not been sentenced, he could not be assigned an offense level for "failure to report for service of sentence" under Sec. 2J1.6(a)(1). The weight of authority, however, indicates "that the legally effective sentence is the oral sentence and the judgment and commitment order is mere evidence of the sentence." United States v. Villano, 816 F.2d 1448, 1452 (10th Cir.1987) (en banc).
 
 
 10
 Still, concluding that Villines had been sentenced does not answer the question of whether or not he failed to report for his sentence when he did not appear for the "continuance of sentencing" hearing. Despite the lack of cases squarely on point, we believe there is authority in this circuit for finding that Villines's failure to appear amounts to a "constructive" failure to report for sentence. In United States v. Yates, 698 F.2d 828 (6th Cir.), cert. denied, 460 U.S. 1073, 103 S.Ct. 1532 (1983), we rejected the defendant's argument that he could not be found guilty under 18 U.S.C. Sec. 3150.[5] The defendant argued that he had never received notice that he should appear and thus did not "wilfully" fail to appear, as required by Sec. 3150. Id. at 830.
 
 
 11
 We found, however, that the defendant's behavior foreclosed any reliance on the technical requirements of the statute. We held that the defendant could not "purposefully engage in a course of conduct to prevent him from receiving notice by absconding and using assumed names" and still claim that lack of actual notice vitiated a finding of willfulness. Id. at 831. We concluded that the defendant was deemed to have constructive notice through delivery of the required notice to his attorney. Ibid.
 
 
 12
 Villines's case is analogous to the situation in Yates. Here, the district court orally imposed a legally effective sentence and the only remaining necessary contingency was setting a date on which Villines was to begin serving his sentence. At Villines's sentencing hearing on October 15, 1990, the district court stated, "So far as this sentence goes, the defendant will be permitted to report to the institution designated by the U.S. marshal for service of his sentence ... on the day indicated." There is no doubt that the court had sentenced Villines and any lacuna in the sentencing procedure was caused by Villines, who absconded after his sentence was announced (though before a report date was set) and managed to elude arrest for over two years. In light of Villines's egregious conduct and clear intent to avoid serving his sentence, Villines should not benefit from a technical deficiency that was, in essence, caused by his own misconduct.
 
 
 13
 We also believe that the policy behind 18 U.S.C. Sec. 3146 and USSG Sec. 2J1.6 would be frustrated if Villines were to benefit from his choice to flee before the district court entered its written sentencing order. Both the statute and the guideline recognize that the more severe and certain the sentence, the more likely a defendant is to flee. For example, the Guidelines increase the punishment for flight in relation to the severity of the defendant's sentence, recognizing the fact that a defendant who is facing a severe sentence is more likely to abscond that a defendant who is facing a relatively short sentence. USSG Sec. 2J1.6(2). This "tiered enhancement structure" provides " 'an accused with sufficient incentive to face the judicial music.' " United States v. Sanchez, 995 F.2d 468, 470 (3d Cir.1993) (quoting United States v. Williams, 932 F.2d 1515, 1517 (D.C.Cir.1991)).
 
 
 14
 Similarly, the enhancement for failure to report for service of sentence is nearly double the enhancment for failure to report for other court proceedings. USSG Sec. 2J1.6(a). This is so because a defendant who knows to a certainty that he will be spending time in prison has a greater incentive to flee than a defendant who, prior to conviction or sentencing, may be pinning his hopes on acquittal or leniency. If a defendant could avoid a harsher sentence by fleeing as soon as his sentenced was announced, Sec. 2J1.6(a)(1) would lose it deterrent effect in cases such as Villines's. We believe that the policy underlying USSG Sec. 2J1.6 supports our conclusion to hold Villines accountable for absconding under the "failure to report for sentence" section of the guideline.
 
 
 15
 Moreover, the district court in this case articulated a reason consistent with Yates and the policy reasons behind Sec. 2J1.6 when it applied Sec. 2J1.6(a)(1) in this case. The court stated that
 
 
 16
 my ruling ... is that this is a case with most peculiar facts. But for this Court rethinking the technical matter [sic] in which I imposed the sentence of a fine in addition to a prison sentence, the defendant would have simply skipped town and there would be no question that he failed to appear for service of a sentence.
 
 
 17
 ....
 
 
 18
 I think to consider this as an other offense [failure to appear for a court appearance] would give the benefit to the defendant of the technicality when he doesn't deserve it and didn't know about it in the first place. He, in the Court's judgment, skipped town because he didn't want to serve a prison sentence; and it is most analogous to, although not on all fours with, the sanction for failure to appear for service of sentence....
 
 
 19
 We hold that the district court's application of Sec. 2j1.6(a)(1) to Villines's case was appropriate in the circumstances.
 
 III
 
 20
 Villines's second argument is that the district court erred when it decided that Villines's sentence for failure to appear should run consecutively, rather than concurrently, with his bank fraud sentence. Villines's argument, however, is premised on the assumption that Sec. 2J1.6(a)(2) applies in this case, rather than Sec. 2J1.6(a)(1).
 
 
 21
 Since we have determined that Sec. 2J1.6(a)(1) applies to Villines, the district court did not err in determining that Villines's sentences should run consecutively. The Guidelines provide that "[i]n the case of a failure to appear for service of sentence, any term of imprisonment imposed on the failure to appear count is to be imposed consecutively to any term of imprisonment imposed for the underlying offense. See Sec. 5G1.3(a)." USSG Sec. 2J1.6, comment. (n. 3). Section 5G1.3(a), provides, in turn, that "[i]f the instant offense was committed while the defendant was serving a term of imprisonment ... or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment." USSG Sec. 5G1.3(a) (emphasis added).
 
 
 22
 These guidelines make it clear that, once the district court applied Sec. 2J1.6(a)(1) to Villines's case, the court was obliged to impose consecutive sentences.[6] Consequently, the district court did not err in imposing consecutive sentences in this case.
 
 IV
 
 23
 Villines's final argument is that the district court should have assigned him a criminal history category of I rather than II. Again, Villines's argument is premised on the contention that he should have been sentenced under Sec. 2J1.6(a)(2). According to Villines, the criminal history points assignable to his bank fraud conviction could not be used if he was sentenced under Sec. 2J1.6(a)(2).
 
 
 24
 Since the district court was correct in sentencing Villines under Sec. 2J1.6(a)(1), the court was also correct in assigning a criminal history category of II. The Guidelines comments on this specific situation:
 
 
 25
 In some cases, the defendant may be sentenced on the underlying offense (the offense in respect to which the defendant failed to appear) before being sentenced on the failure to appear offense. In such cases, criminal history points for the sentence imposed on the underlying offense are to be counted in determining the guideline range on the failure to appear offense only where the offense level is determined under subsection (a)(1) (i.e., where the offense constituted a failure to report for service of sentence).
 
 
 26
 USSG Sec. 2J1.6, comment. (n. 4).
 
 
 27
 Thus, in this situation, a district court must include in its calculation of criminal history points the points derived from the underlying offense. Here, Villines's conviction for bank fraud would have resulted in three criminal history points, which places him in a criminal history category of II. See USSG Sec. 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month"). Therefore the district court did not err when it assigned Villines a criminal history category of II.
 
 
 28
 For the foregoing reasons, we AFFIRM the district court's sentence.
 
 
 29
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 30
 "No principle of law is better established than the necessity of the criminal law speaking clearly. Accordingly, courts are bound to construe narrowly the applicability of any criminal statute." D & W Food Centers, Inc. v. Block, 786 F.2d 751, 758 (6th Cir.1986) (citing United States v. Bass, 404 U.S. 336, 346-48 (1971)); see also United States v. Levin, 973 F.2d 463, 467 (6th Cir.1992) ("court must construe criminal statute narrowly and in favor of the defendant.") (citing United States v. Patterson, 664 F.2d 1346, 1348 (9th Cir.1982)). Thus, in Dowling v. United States, the Supreme Court reminded us that:
 
 
 31
 The rule that penal laws are to be construed strictly, is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment.
 
 
 32
 473 U.S. 207, 213-14 (1985) (quoting Chief Justice Marshall in United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95 (1820)). From this venerable premise, the Dowling Court concluded that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." Id. at 214 (quoting Williams v. United States, 458 U.S. 279, 290 (1982)).
 
 
 33
 In its zeal to punish the defendant in the present case as harshly as possible for his "egregious conduct and clear intent to avoid serving his sentence," Majority Op. at 8, the majority has ignored these elementary principles. I am therefore compelled to dissent.
 
 I.
 
 34
 Section 2J1.6 of the Sentencing Guidelines "applies to a failure to appear by a defendant who was released pending trial, sentencing, appeal, or surrender for service of sentence." Sec. 2J1.6, comment. (backg'd). The section's operation is divided into two categories. Subsection 2J1.6(a)(1) applies only to "a failure to report for service of sentence." Subsection 2J1.6(a)(2) applies "otherwise." The guideline's language could hardly be plainer.
 
 
 35
 Applying this language to the present case, the undeniable fact is that Villines failed to appear for a continuation of his sentencing hearing. A continuation of a sentencing hearing is, of course, something other than service of sentence. The inescapable conclusion, then, is that Villines should be punished pursuant to Sec. 2J1.6(a)(2) rather than Sec. 2J1.6(a)(1).
 
 
 36
 Yet, the majority eschews the obvious and plain meaning of the sentencing guideline. Rather, it creates a fiction that, in the majority's own words, "amounts to a 'constructive' failure to report for sentence." Majority Op. at 7. The majority thereby broadly construes a clear and unambiguous sentencing guideline to have a meaning that is entirely opposite to that which its plain language unmistakably indicates. In so doing, the majority breaches what our precedent holds to be its obligation to "construe criminal statute[s] narrowly and in favor of the defendant," Levin, 973 F.2d at 467, and ignores "the plain principle that the power of punishment is vested in the legislative, not in the judicial department." Dowling, 473 U.S. at 214.
 
 
 37
 The majority attempts to justify its tortured construction of Sec. 2J1.6(a)(1) by explaining that: (1) Villines's conduct was "egregious"; (2) his "clear intent [was] to avoid serving his sentence"; and (3) "Villines should not benefit from a technical deficiency that was, in essence, caused by his own misconduct." Majority Op. at 8. However, these explanations are inadequate to support the majority's position.
 
 
 38
 First, the Sentencing Commission, acknowledging that failing to appear to a sentencing hearing constitutes egregious conduct, provided a specific penalty for this conduct in Sec. 2J1.6(a)(2). Thus, the egregiousness of Villines's conduct in failing to appear for a sentencing hearing does not justify applying the harsher penalty provided in Sec. 2J1.6(a)(1).
 
 
 39
 Second, the "four corners" of Sec. 2J1.6 say nothing about a defendant's mens rea. Rather, the guideline unambiguously distinguishes between failure to appear for service of sentence and all other types of failure to appear. This distinction has nothing to do with a defendant's intent, and, for purposes of deciding which subpart (Sec. 2J1.6(a)(1) or (2)) applies to a given failure to appear, intent is utterly irrelevant.
 
 
 40
 Third, the trial judge sua sponte called for Villines's sentencing hearing to be continued, not due to any fault attributable to Villines, but rather due to what the judge admits was his own error. See Majority Op. at 2. Thus, the majority's attributing the "technical deficiency" to misconduct on the part of Villines is insupportable.
 
 
 41
 The majority also attempts to justify its construction of Sec. 2J1.6(a)(1) by relying on United States v. Yates, 698 F.2d 828 (6th Cir.), cert. denied, 460 U.S. 1073 (1983). However, Yates makes no reference to a "constructive failure to report for sentencing." To the contrary, the defendant in Yates simply "fail[ed] to surrender on April 1, 1981 to begin service of his sentence in accordance with the orders of the district court." Id. at 829. There was, then, nothing "constructive" about Yates's failure to report. For this reason, and because Villines failed to appear for a continuation of his sentencing hearing rather than for service of his sentence, Yates is inapposite to the present case.
 
 
 42
 The majority also attempts to justify its failure to apply Sec. 2J1.6(a) in accordance with its literal and unambiguous meaning by resorting to "the policy behind" the guideline. Majority Op. at 9. Ironically, the en banc court recently flatly rejected an analogous argument where delving into underlying policy would have resulted in a lighter sentence for a criminal defendant. See United States v. Brady, 988 F.2d 664, 666-67 & n. 4 (6th Cir.) (holding that the statute's lack of any ambiguity forestalled inquiry into the policy underlying the statute), cert. denied, 114 S.Ct. 166 (1993); id. at 671-74 (Jones, J., dissenting) (arguing that the underlying policy favored defendant's position). Comparing the present case with Brady, then, it would appear that this circuit is committed to delving into "underlying policy" arguments only where such an analysis results in a harsher sentence. How far, it seems, we have fallen from the principle, "founded on the tenderness of the law for the rights of individuals," that "penal laws are to be construed strictly" in favor of defendants. Dowling, 473 U.S. at 213-14 ( quoting Wiltberger, 18 U.S. at 95).
 
 
 43
 Even if, for the sake of argument, one were somehow to regard Sec. 2J1.6(a)(1) and (2) as ambiguous, which could serve to justify the majority's reliance on underlying policy considerations, the harsher sentence still ought not to apply, for "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." Rewis v. United States, 401 U.S. 808, 812 (1971).
 
 
 44
 In short, then, the majority's conclusion results in a betrayal principles that are fundamental to our criminal justice system when it insists on punishing Villines more harshly than is indicated by the unambiguous applicable sentencing guideline.
 
 II.
 
 45
 I agree with the majority that Villines's second and third arguments are "premised on the assumption that Sec. 2J1.6(a)(2) applies in this case, rather than Sec. 2J1.6(a)(1)." Majority Op. at 11. Thus, because I would hold that Sec. 2J1.6(a)(2) applies, I would further conclude that Villines's bank fraud and failure to appear should not be treated as separate offenses begetting consecutive sentences, and should not have been assigned a criminal history category of level II.
 
 
 46
 Perhaps the most important difference between the penalties imposed by subsections (1) and (2) of Sec. 2J1.6(a) is that, under subsection (1), "any term of imprisonment imposed on the failure to appear count is to be imposed consecutively to any term of imprisonment imposed for the underlying offense." Comment. (n. 3). ("Underlying offense" means the offense in respect to which the defendant failed to appear." Id. at n. 1.) In contrast, if one is convicted of a failure to appear for anything other than service of sentence, "the failure to appear is treated under Sec. 3C1.1 (Obstructing or Impeding the Administration of Justice) as an obstruction of the underlying offense; and the failure to appear count and the count(s) for the underlying offense are grouped together under Sec. 3D1.2(c)." Id. at n. 3. (Section 3C1.1 adds two levels to the underlying offense for obstruction of justice. The Commentary to Sec. 3C1.1 instructs that courts should apply either the two level adjustment specified in this section, or the offense level for the obstruction offense alone, whichever is greater. Application Note 6. See generally United States v. Lechuga, 975 F.2d 397, 400-01 (7th Cir.1992).)
 
 
 47
 With regard to the present case, application note 3 implies that, because Villines is being sentenced under Sec. 2J1.6(a)(1), his failure to appear is a separate crime altogether from his bank fraud. It follows that his failure to appear is punished by a separate, consecutive sentence. Although he has no criminal history other than the bank fraud, because the fraud is counted separately, his failure to appear is sentenced at criminal history level II.
 
 
 48
 On the other hand, if Villines were to be sentenced under Sec. 2J1.6(a)(2), as I believe he should be, his failure to appear and his bank fraud would be grouped together as one offense, to be sentenced at criminal history level I. See Lechuga, 975 F.2d at 400. The sentence, then, would be either the sentence for bank fraud increased by two levels for obstruction of justice, or the sentence for the failure to appear alone, whichever would be greater.
 
 III.
 
 49
 For the foregoing reasons, I would reverse the district court's application of Sec. 2J1.6(a)(1), and remand for resentencing in accordance with Sec. 2J1.6(a)(2).
 
 
 
 [1]
 This guideline provides as follows:
 Sec. 2J1.6 Failure to Appear by Defendant
 (a) Base Offense Level:
 (1) 11, if the offense constituted a failure to report for service of sentence; or
 (2) 6, otherwise.
 USSG Sec. 2J1.6(a).
 
 
 [2]
 Section 2J1.6(b)(2) provides, in pertinent part:
 (2) If the base offense level is determined under [Sec. 2J1.6] (a)(2), and the underlying offense is--
 * * *
 (B) punishable by a term of imprisonment of five years or more, but less than fifteen years, increase by 6 levels....
 USSG Sec. 2J1.6(b)(2)(B).
 
 
 [3]
 Section 5G1.3 of the Guidelines provides as follows:
 (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
 (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
 (c) (Policy Statement) In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.
 USSG Sec. 5G1.3.
 
 
 [4]
 Section 5G1.2(d) provides as follows:
 (d) If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects sentences on all counts shall run concurrently, except to the extent otherwise required by law.
 USSG Sec. 5G1.2(d).
 
 
 [5]
 Section 3150 is the forerunner to Sec. 3146, the statute under which Villines pleaded guilty for failure to appear
 
 
 [6]
 Villines argues that Sec. 5G1.3(b) applies to his case. This section provides that "[i]f [5G1.3(a) ] does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." USSG Sec. 5G1.3(b). The commentary, however, makes it clear that this section applies to cases where "a defendant is prosecuted in both federal and state court, or in two or more jurisdictions, for the same criminal conduct...." USSG Sec. 5G1.3, comment. (n. 2). Villines's situation does not fit within the Guidelines' comments and thus his argument is without merit