No. 59,013

STATE OF KANSAS, *Appellant*, v. DAN L. FITZGERALD, *Appellee*.

(726 P.2d 1344)

Opinion filed October 31, 1986.

*Geary N. Gorup*, assistant district attorney, argued the cause and *Robert T. Stephan*, attorney general, *Clark V. Owens*, district attorney, and *Debra Barnett*, assistant district attorney, were on the brief for appellant.

There was no appearance by appellee.

The opinion of the court was delivered by

HOLMES, J.: The State of Kansas appeals, pursuant to K.S.A. 22-3602, upon a question reserved following the trial court's discharge of the defendant in an action charging him with bigamy (K.S.A. 21-3601).

The facts are not in dispute. Dan and Donna Fitzgerald were married on August 1, 1980, at El Paso, Texas. In January 1983, the couple moved to Manhattan. While they lived in Manhattan, Dan attended school at Wichita State University. On October 20, 1983, Kerry Hsieh and the appellee were married in Wichita. Dan was still married to Donna and lived with her in Manhattan on weekends and holidays. During the week while in Wichita attending college, he lived with Kerry, who thought she was his wife. In August 1984, Kerry discovered that Dan was married to Donna and had been since 1980. Dan and Donna had two children at the time of this action. On October 22, 1984, in a proceeding brought by Kerry in the district court of Sedgwick County, the marriage between her and appellee was annulled. The evidence at trial in the case now before this court included the testimony of Donna Fitzgerald and Kerry Hsieh. At the close of the State's case, appellee moved for discharge on the grounds that the annulment of the second marriage precluded any con-

viction of bigamy. On November 19, 1985, the court filed its memorandum opinion discharging the defendant, Dan L. Fitzgerald, based upon the court's conclusion that no "marriage" occurred between Dan Fitzgerald and Kerry Hsieh due to the annulment which was granted in October 1984.

The sole issue on appeal is whether annulment of the second marriage will preclude a conviction for bigamy, pursuant to K.S.A. 21-3601.

The crime of bigamy is defined as the act of marrying or contracting a second marriage while the spouse by a former marriage is still alive and the former marriage is still in force. 10 Am. Jur. 2d, Bigamy § 1; 10 C.J.S., Bigamy § 1. In Kansas the offense of bigamy is defined in K.S.A. 21-3601, which provides:

"**21-3601. Bigamy.** (1) Bigamy is any of the following:

(a) Marriage within this state by any person who shall have another spouse living at the time of such marriage;

(b) Marriage within this state by an unmarried person to a person known to such unmarried person to be the spouse of some other person;

(c) Cohabitation within this state after marriage in another state or country under circumstances described in subsection (1)(a) or subsection (1)(b) of this section.

(2) It shall be a defense to a charge of bigamy that the accused reasonably believed the prior marriage had been dissolved by death, divorce or annulment.

(3) Bigamy is a class E felony."

The trial court's holding that annulment of the second (or bigamous) marriage barred a conviction based upon the annulled marriage was error. In Kansas a bigamous marriage is absolutely void, with or without an annulment proceeding. In *Johnson County National Bank & Trust Co. v. Bach*, 189 Kan. 291, 295-96, 369 P.2d 231 (1962), the court stated:

"Under Kansas law a marriage where one of the parties at the time has a husband or wife living is *void, absolutely and in all its aspects*. It requires no judgment of divorce or of nullity to render it void. It is void inherently and from the beginning. The innocent party may, however, maintain an action in equity to have such colorable marriage declared null and void. *(Fuller v. Fuller*, 33 Kan. 582, 7 Pac. 241.) In *Powell v. Powell*, 18 Kan. 371, the court, speaking of a void marriage for want of mental capacity on the part of one of the parties, said: 'Not only was there no marriage *de jure*, but it would also be a misnomer to call it a marriage *de facto*, although law-writers thus frequently designate it.' (p. 379.) (See, also, *Werner v. Werner*, 59 Kan. 399, 53 Pac. 127; *Browning v. Browning*, 89 Kan. 98, 130 Pac. 852; and 35 Am. Jur., Marriage, § 148, p. 271.)

"A void marriage may be treated as void by the parties to it and by all the world. It is good for no legal purpose, and is not attended or followed by any of

the incidents of a valid marriage. A decree or adjudication of annulment for a void marriage is supported because conducive to good order and decorum, and to the peace and conscience of the party seeking it. (*Powell v. Powell*, supra.) An annulment has the effect of declaring the marriage relation void *ab initio*. (See, *In re Estate of Crump*, 161 Kan. 154, 166 P.2d 684.)"

In the present case the granting of the annulment was done solely for the benefit and convenience of the victim, Kerry Hsieh. The order of annulment had no effect on the actual legal status of the alleged marriage. The ruling of the trial court, if approved, would effectively nullify the offense of bigamy as it appears in K.S.A. 21-3601 since under Kansas law a bigamous marriage can never be a valid marriage and is always void.

While Kansas authority on the subject of bigamous marriages is sparse and not on point for the present issue, case law from other jurisdictions serves well to illustrate the error of the trial court. In *State v. Eden*, 350 Mo. 932, 169 S.W.2d 342 (1943), the defendant sought to avoid a conviction of bigamy claiming, among other things, that the second marriage was absolutely void and, therefore, there was no "marriage." The court dismissed this contention, citing 7 Am. Jur., Bigamy § 13 to the effect that "it is the appearing to contract a second marriage and going through the ceremony which constitutes the crime of bigamy; otherwise it could never exist in ordinary cases, as a previous marriage always renders null and void a marriage celebrated afterward by either of the parties during the lifetime of another." 350 Mo. at 938.

A similar approach was adopted in *Allen v. State*, 17 Ga. App. 431, 87 S.E. 681 (1916). The defendant, while married, entered into a marriage with a woman who was also married. The court discussed the relationship involving the various existing and purported marriages, noting that before there can be bigamy there must be a prior legal contract of marriage still in existence. The court stated:

"One can not be convicted for entering into a valid marriage. A marriage between one already married and one unmarried is not a valid marriage, because one of the parties labors under the disability of a 'previous marriage undissolved,' yet a married person who enters into the contract with one unmarried can be convicted legally of bigamy. . . . Before there can be bigamy, it is true, there must have been a prior legal contract of marriage; but the crime of bigamy is based entirely upon the proposition that the second or bigamous marriage is not and can not be legal. If it were a legal marriage, there could be no bigamy." p. 432.

The court concluded by quoting from *State v. Patterson*, 24 N.C.

346, 38 Am. Dec. 699 (1842), which details the gravamen of the offense:

"[I]t is the abuse of this formal and solemn [marriage] contract, by entering into it a second time when a former husband or wife is yet living, which the law forbids because of its outrage upon public decency, its violation of the public economy, as well as its tendency to cheat one into a surrender of the person under the appearance of right. A man takes a wife lawfully, when the contract is lawfully made. He takes a wife unlawfully when the contract is unlawfully made — and this unlawful contract the law punishes." p. 356.

See *State v. Lewis*, 46 Wash. 2d 438, 282 P.2d 297 (1955); *Stevens v. State*, 156 Tex. Crim. 431, 243 S.W. 2d 162 (1951); *State v. Hughes*, 58 Iowa 165, 11 N.W. 706 (1882).

The trial court in its opinion stated, in part:

"It is not sufficient to show that the Defendant went through the 'actions' of becoming married. It must be shown that Defendant was 'married' *lawfully* in order to successfully prosecute him for Bigamy." (Emphasis added.)

While it is true that K.S.A. 21-3601 is a penal statute and subject to the rule requiring strict construction in favor of the accused, this rule is subordinate to the rule requiring judicial interpretation to be reasonable and sensible to effectuate the legislative design and intent in enacting the statute. *State v. Fowler*, 238 Kan. 213, Syl. ¶ 1, 708 P.2d 539 (1985). Adoption of the rule pronounced by the trial court would effectively erase the crime of bigamy from our law, an unreasonable interpretation and one clearly contrary to the specific legislative intent. A person cannot be lawfully married and also guilty of bigamy for the same marriage. We find the rationale of our sister states persuasive and hold that when a person enters into a purported marriage contract or relationship at a time when the person already has a living spouse, the crime of bigamy has been committed. Annulment of the second or bigamous marriage is no defense to the crime.

The appeal is sustained.