Daniel D. Creitz Erie City Attorney P.O. Box 108 Erie, Kansas 66733
Dear Mr. Creitz:
You request our opinion on two specific issues regarding a training exercise planned and executed by the city of Erie police department and volunteer fire department.
You explain that the exercise involved a hypothetical electrical accident on a low cat walk at a grain elevator located in town, and that the only people aware that it was merely an exercise rather than a real situation were the volunteer fire chief, the chief of police, the sheriff of the county in which the city of Erie is located and a representative of the grain company. On the day of the exercise, the sheriff's office dispatcher was contacted and told there had been an accident at the grain company. The volunteer fire department, two ambulances and the high-angle rescue team were dispatched, causing volunteers and equipment to respond to the "scene." Apparently, anyone listening to a scanner would have heard the call to respond, but approximately 12 minutes later a disclaimer was broadcast. Your first question is this: "Do planned training exercises of the Erie Volunteer Fire Department and the Erie Police Department, where disclaimers announcing that it is a training exercise are not broadcast over the radio until after volunteers respond to the scene, constitute false alarms, in violation of K.S.A. 1994 Supp. 21-4110?"
K.S.A. 1994 Supp. 21-4110 provides as follows:
"(a) Giving a false alarm is:
 "(1) Initiating or circulating a report or warning of an impending bombing or other crime or catastrophe, knowing that the report or warning is baseless and under such circumstances that it is likely to cause evacuation of a building, place of assembly or facility of public transport or to cause public inconvenience or alarm;
 "(2) transmitting in any manner to the fire department of any city, township or other municipality a false alarm of fire, knowing at the time of such transmission that there is no reasonable ground for believing that such fire exists; or
 "(3) making a call in any manner for emergency service assistance including police, fire, medical or other emergency service provided under K.S.A. 12-5301 et seq., and amendments thereto, knowing at the time of such call that there is no reasonable ground for believing such assistance is needed.
"(b) Giving a false alarm is a class A nonperson misdemeanor."
Because giving a false alarm is a crime, the provisions of K.S.A. 1994 Supp. 21-4110 must be strictly construed against the state.State v. Palmer, 248 Kan. 681 (1991). This generally means that ordinary words are to be given their ordinary meaning, and that the statute should not be read to add that which is not readily found therein or to remove what as a matter of ordinary English language is in it. Id. However, this rule requiring strict construction is subordinate to the rule requiring judicial interpretation to be reasonable and sensible to effectuate the legislative design and intent in enacting the statute. State v.Fitzgerald, 240 Kan. 187 (1986).
We believe the intent of this statute is to punish individuals who maliciously summon emergency personnel knowing there is no real emergency or who cry "bomb!" or "fire!" under such circumstances that it is likely to cause public alarm or panic. Subsection (a)(1) requires not only that a "baseless" report or warning be made, but also that the person issuing the report or warning knows it will or is likely to "cause evacuation of a building, place of assembly or facility of public transport or to cause public inconvenience or alarm." Here, the fire department was not circulating a report or warning among the public, and the circumstances described were not "likely to cause evacuation . . . or to cause public inconvenience or alarm." While a few citizens not involved in the exercise may have intercepted the dispatch and become alarmed, we do not believe that would be viewed by the courts as a circumstance likely to cause general public alarm particularly when a disclaimer was made 12 minutes after the dispatch. And, because it was a departmental exercise rather than an individual crying wolf, we do not believe the other sections of the bill are implicated either. See Minutes, House Committee on Judiciary, Feb. 21, 1984 (the stated purpose for subsection (c), which was added to the statute by L. 1984, ch. 122, sec. 1, was to deter high school students from making false 911 calls). Clearly, the statute was not intended to cover the actions with which you are concerned where the fire and police department heads planned an exercise, not to jeopardize the departments or the public, but to provide training for their respective employees.
You next ask: "What, if any, civil liability does the City of Erie and Neosho County incur by having planned training exercises of the Erie Volunteer Fire Department and Erie Police Department, with dispatch services provided by the Neosho County Sheriff's Office, where a disclaimer announcing that it is a training exercise is not broadcast over the radio until after volunteers respond to the scene, instead of broadcasting the disclaimer before dispatching volunteers to the scene?"
Although we conclude that the city of Erie fire department exercise did not constitute giving a false alarm, reference may be made to the Kansas tort claims act, K.S.A. 75-6101 et seq, to examine any civil liability the city of Erie and Neosho county may incur for any damages that may result from such training exercises. K.S.A. 75-6103(a) of the act states that:
 "Subject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the laws of this state."
K.S.A. 1994 Supp. 75-6102(d) defines "employee" as "any officer, employee, servant or member of a board, commission, committee, division, department, branch or council of a governmental entity, including elected or appointed officials and persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation." (Emphasis added.) Clearly the volunteer fire fighters are employees of the city because the city is within the act's definition of "governmental entity," K.S.A. 1994 Supp. 75-6102(c) and 75-6102(b), and the volunteers are acting on behalf or in service of the city in an official capacity when responding to an alarm.See also Attorney General Opinion No. 82-215 (concluded that volunteer police officers of the Ness city police department were within the act's definition of employees). Likewise, counties fall within the definition of a governmental entity, and the sheriff and sheriff's office dispatcher are clearly county employees.
Thus the county, like the city, would be liable for actions of their respective employees so long as they were acting within the scope of their employment and unless their actions fall under one of the exceptions to K.S.A. 75-6103. The test for whether an employee has acted within the scope of his or her employment is found in Hollinger v. Stormont Hospital and Training School forNurses, 2 Kan. App. 2d 302, 311-12 (1978): "An employee is acting within the scope of his authority when he is performing services for which he is employed or when he is doing anything which isreasonably incidental to his employment." The training exercises of the Erie fire fighters are an activity "reasonably incidental" to their employment and are thus considered within the scope of their employment.
The city and county may, however, be exempt from the tort claims act with regard to their fire department training exercises. K.S.A. 1994 Supp. 75-6104(n) which provides that "[a] government entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from: . . . (n) failure to provide, or the method of providing, police or fire protection." Assuming a training exercise is within the definition of the provision of police and fire protection, both the county and the city may be exempted from liability. The Kansas Supreme Court stated in Jackson v. City of Kansas City that "subsection (m) [now subsection (n)] is aimed at such basic matters as the type and number of fire trucks and police cars considered necessary for the operation of the respective departments; how many personnel might be required; how many and where police patrol cars are to operate; the placement and supply of fire hydrants; and the selection of equipment options . . . We do not believe subsection [(n)] is so broad as to immunize a city on every aspect of negligent police and fire department operations." 235 Kan. 278, 292 (1984). Whether a particular method of dispatching fire and police personnel to a training exercise is within the meaning of the exception requires a case by case analysis and may depend heavily on the circumstances. We note, however, that it would appear appropriate for emergency service entities to train their personnel in realistic situations so that they will be better able to respond to real life situations.
In summary, the training exercise of the Erie police department and volunteer fire department described herein does not meet the definition of giving a false alarm under K.S.A. 1994 Supp.21-4110. The city and county are liable under the tort claims act for any damages resulting from negligent performance of the exercises unless exempted from liability under K.S.A. 1994 Supp.75-6104(n). Whether particular training exercises are determined within the meaning of the exemption is a question of fact.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm