*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0073p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

                    *Plaintiff-Appellee,*

       *v.*

KANADI MOHAMED ALI,

               *Defendant-Appellant.*

No. 07-6446

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 06-20149-001—Jon Phipps McCalla, Chief District Judge.

Argued: October 22, 2008

Decided and Filed: February 27, 2009

Before: MOORE, GRIFFIN, and BRIGHT, Circuit Judges.[*]

_____

## COUNSEL

**ARGUED:** Leslie I. Ballin, BALLIN, BALLIN & FISHMAN, Memphis, Tennessee, for Appellant. Stephen C. Parker, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Leslie I. Ballin, BALLIN, BALLIN & FISHMAN, Memphis, Tennessee, for Appellant. Stephen C. Parker, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

      GRIFFIN, J., delivered the opinion of the court. BRIGHT, J. (p. 18), delivered a separate concurring opinion. MOORE, J. (pp. 19-21), delivered a separate opinion concurring in part and dissenting in part.

_____

    [*]The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

---

**OPINION**

---

GRIFFIN, Circuit Judge.    Defendant Kanadi Mohamed Ali appeals his conviction for knowingly making a false statement under oath relating to naturalization, citizenship, or registry of aliens in violation of 18 U.S.C. § 1015(a).[1] The indictment charged that defendant Ali knowingly and falsely answered "no" to the question on his N-400 Application for Naturalization asking, "Have you ever . . . been married to more than one person at the same time?"  The government contends that defendant Ali was married to more than one person at the same time because he married Paula Sweet in Georgia before his divorce to Farida Bouhiaoui in Canada became final.  Defendant Ali counters that his answer was truthful as a matter of law because his attempted marriage to Sweet was "void ab initio" under state bigamy laws which void attempted second marriages when the first has not yet been dissolved.  Ali entered a conditional plea of guilty to the charge under Federal Rule of Criminal Procedure 11(a)(2),[2] while reserving the right to appeal the district court's rulings (1) denying his motion to dismiss the indictment and (2) granting the government's motion to exclude his "mistake of law defense."

For the reasons that follow, we affirm the district court's denial of the motion to dismiss the indictment, reverse the district court's grant of the government's motion to exclude the "mistake of law" defense, and remand for further proceedings.

---

[1]18 U.S.C. § 1015(a) provides that "[w]hoever knowingly makes any false statement under oath, in any case, proceeding, or matter relating to, or under, or by virtue of any law of the United States relating to naturalization, citizenship, or registry of aliens . . . [s]hall be fined under this title or imprisoned not more than five years, or both."

[2]Federal Rule of Criminal Procedure 11(a)(2) provides that "[w]ith the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.  A defendant who prevails on appeal may then withdraw the plea."

I.

Kanadi Mohamed Ali is a citizen of Israel who lives as a permanent resident in Nashville, Tennessee. On February 15, 1993, Ali married Farida Bouhiaoui, a Canadian citizen, in Montreal, Canada. Ali and Bouhiaoui separated in November 1993, and Ali moved to Georgia. The Montreal Superior Court mailed Ali a "Declaration" of divorce written in French and dated February 16, 1995. The "Declaration" was not a judgment of divorce, although Ali, who does not read or write French (but speaks some French), maintains that he mistakenly interpreted it as such. Later that year, on October 11, 1995, Ali married Paula Sweet in Georgia.

The Montreal Superior Court mailed Ali an "Amended Declaration" of divorce dated January 19, 1996. According to Ali, it was at that time that he realized he was not yet divorced from Bouhiaoui and that he had a "problem." In June 1996, the Montreal Superior Court entered a "Judgment of Divorce" finalizing the divorce between Ali and Bouhiaoui. Ali then remarried Sweet in Tennessee on November 16, 1996.

On December 13, 1996, Ali signed an application for permanent residence (green card) in the United States, using his marriage to Sweet, an American citizen, as the basis for his request. Ali received a permanent resident card on April 1, 1998. On September 15, 2000, Ali and Sweet were divorced.

On March 24, 2003, Ali filed an N-400 Application for Naturalization. Question 22.d. of section D of the application, entitled "Good Moral Character," asked, "Have you ever: . . . [b]een married to more than one person at the same time?" Ali checked the box for "No." In a handwritten attachment to the application, Ali disclosed his marriage and divorce to Bouhiaoui and his November 1996 marriage to Sweet in Tennessee. He did not reveal, however, his October 1995 marriage to Sweet in Georgia.

During his final interview for naturalization on November 30, 2005, Ali, represented by counsel, orally reaffirmed under oath his answer of "no" to question 22.d. and signed a section swearing that his answers in the application were truthful.

Immigration authorities later discovered the overlap in Ali's marital relations with Bouhiaoui and Sweet and denied Ali's citizenship application.

On May 9, 2006, a grand jury returned a two-count indictment against Ali. Count One charged him with knowingly making a false statement under oath on his N-400 Application for Naturalization by answering "no" to the question asking whether he had "ever . . . been married to more than one person at the same time[,]" in violation of 18 U.S.C. § 1015(a). Count Two charged him with knowingly making a false statement under oath on his N-400 Application for Naturalization by answering "no" to the question asking whether he had "ever given false or misleading information to any U.S. government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal[,]" in violation of 18 U.S.C. § 1015(a).

On February 6, 2007, Ali filed a motion to dismiss the indictment, arguing that his answer of "no" to the question asking whether he had "ever been married to more than one person at the same time" was true as a matter of law. Specifically, Ali asserted that under either Georgia or Tennessee law, his attempted marriage to Sweet in October 1995 was void ab initio and that, therefore, he was never actually "married" to Sweet during the period in which he was still married to Bouhiaoui. The government opposed the motion but later stipulated at a hearing on a separate motion that Ali's attempted marriage to Sweet in October 1995 was void ab initio. The district court denied the motion to dismiss by oral order following a hearing on March 29, 2007.

On July 5, 2007, the government filed a motion to exclude what it called Ali's "mistake of law defense." The motion characterized one of Ali's principal defense theories – that he honestly believed that his attempted marriage to Sweet in October 1995 did not result in a legal "marriage" – as a "mistake of law defense." The government requested that the court preclude Ali from testifying about his knowledge regarding the statuses of his marriages and the manner in which he interpreted the question forming the basis of the charges against him. Ali responded that the government mischaracterized his defense theory as a "mistake of law defense" and urged the court to permit him to prove to the jury that he did not "know" that the answer he

provided to question 22.d. was false, thereby negating the mens rea element of the offense.  Following a hearing on July 9, 2007, the district court entered an oral order granting the government's motion to exclude the "mistake of law defense."

Immediately after the district court granted the government's motion, Ali entered a conditional plea of guilty under Rule 11(a)(2) of the Federal Rules of Criminal Procedure to Count One of the indictment, reserving in the plea agreement the right to appeal the district court's denial of his motion to dismiss the indictment and its grant of the government's motion to exclude his "mistake of law defense."  Pursuant to the plea agreement and the government's motion, the district court dismissed Count Two of the indictment.  It sentenced Ali to a one-year term of probation.

Ali timely appealed.

## II.

### A.

Ali contends that the district court erred in denying his motion to dismiss the indictment on the basis that neither party disputes that his attempted marriage to Sweet in October 1995 was "void ab initio" under both Georgia and Tennessee law.  Because the attempted marriage was a nullity, Ali asserts that he could not, as a matter of law, have made a false statement in violation of 18 U.S.C. § 1015(a) when he answered "no" to the question asking whether he had "ever . . . been married to more than one person at the same time[.]"  We disagree.

As a threshold matter, the government characterizes Ali's defense as a claim of "actual innocence" and contends that such a defense may not be raised in a motion to dismiss the indictment.  The government, however, did not raise that issue before the district court.  Although "we may exercise our discretion to review an issue not raised below in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice," *United States v. Chesney*, 86 F.3d 564, 567-68 (6th Cir. 1996), no such exceptional circumstances are present here.  Thus, the issue is waived.

B.

Assuming arguendo that the issue was properly raised or that exceptional circumstances exist, the argument is without merit. Rule 12(b)(2) of the Federal Rules of Criminal Procedure permits a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue[,]" and Rule 12(b)(3)(B) permits a court "at any time while the case is pending . . . [to] hear a claim that the indictment or information fails to . . . state an offense." A motion under Rule 12 is therefore appropriate when it raises questions of law rather than fact. *See United States v. Levin*, 973 F.2d 463, 469 (6th Cir. 1992) (affirming the district court's dismissal of an indictment when "undisputed extrinsic evidence" demonstrated that "the government was, as a matter of law, incapable of proving" an element of the offense). We explained in *Levin* that:

> Rule 12 of the Federal Rules of Criminal Procedure and its component parts encourage district courts to entertain and dispose of pretrial criminal motions before trial if they are capable of determination without trial of the general issues. Moreover, district courts may make preliminary findings of fact necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact.

*Id*. at 467. Similarly, the Supreme Court has stated that a defense may be properly raised pursuant to Rule 12 "if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969).[3]

Ali's motion to dismiss did not assert an innocence defense; rather, it requested dismissal of the indictment on the ground that, as a matter of law, the undisputed facts did not give rise to the offense charged in the indictment. Stated differently, Ali's contention that the undisputed facts demonstrate that he answered the question truthfully as a matter of law raises a purely legal question about whether the indictment stated an

---

[3]The Court was interpreting a former version of Rule 12(b)(1), which provided that "[a]ny defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion." *Covington*, 395 U.S. at 60. The current version of Rule 12(b)(2) contains similar language.

offense.  *See United States v. Vertz*, 40 F. App'x 69, 70 (6th Cir. 2002) (unpublished) (stating that "where the defendant is arguing that as a matter of law the undisputed facts do not constitute the offense charged in the indictment, the Court is reviewing a question of law, not fact").  Because the question is a legal one, we conclude that Ali properly asserted it in a motion to dismiss.

## C.

We review de novo the district court's denial of Ali's motion to dismiss the indictment.  *United States v. Grenier*, 513 F.3d 632, 636 (6th Cir. 2008).

Although Ali is correct, and the government so stipulated, that his marriage to Sweet was void ab initio under both Georgia[4] and Tennessee[5] law, we hold that the indictment nevertheless stated criminal offenses against him under 18 U.S.C. § 1015(a).  As an initial observation, if we assume, as Ali urges, that he entered into an invalid or bigamous second marriage not knowing that the first was undissolved and only discovered that fact after his second marriage ceremony, we conclude that the ordinary truthful person would not have answered "no" to a question asking whether he has "ever . . . been married to more than one person at the same time."  A layperson, particularly one who had lived in the United States for ten years, as well as a legal expert, would both understand that the purpose of such a question in the "moral character" section of a citizenship application is to assess whether the applicant has ever committed bigamy.

---

[4] Section 19-3-2(a)(3) of the Official Code of Georgia Annotated provides that "[t]o be able to contract marriage, a person must:  . . . [h]ave no living spouse of a previous undissolved marriage."  *See also Lovett v. Ziegler*, 160 S.E.2d 360, 361 (Ga. 1968) ("A previous undissolved marriage renders void an attempted second marriage."); *Bryant v. Bryant*, 119 S.E.2d 573, 575 (Ga. 1961) ("A previous undissolved marriage of one of the parties to a marriage ceremony renders such party incapable of making a marriage contract.  A marriage ceremony involving such a party is void.").

[5] Section 36-3-102 of the Tennessee Code Annotated provides, in relevant part, that "[a] second marriage cannot be contracted before the dissolution of the first."  *See also Guzman v. Alvares*, 205 S.W.3d 375, 381 (Tenn. 2006) ("Because bigamous marriages are prohibited by statute, such marriages are void from the beginning. . . .  The parties to a bigamous marriage stand in the same relationship as if the subsequent marriage never occurred.").

Moreover, Ali's contention that he told the truth as a matter of law merely because Georgia and Tennessee law rendered his attempted second marriage void ab initio is legally untenable. If we were to adopt that reasoning and dismiss the indictment, it would nullify all criminal bigamy laws by giving a defendant charged with bigamy a foolproof defense – that he could not have, as a matter of law, committed bigamy because his attempted second marriage was automatically void. That virtual "impossibility" defense is not what state legislatures intended when they enacted laws voiding bigamous marriages.

Bigamy laws and those voiding attempted second marriages when the first is not dissolved were enacted "to support the sanctity of the marriage relation and the welfare of society." *Guzman*, 205 S.W.3d at 381. They were not enacted to grant persons a license to commit bigamy or to lie about their marital histories on citizenship applications. In other words, civil statutes rendering bigamous marriages void ab initio do not exonerate defendants charged with bigamy, nor do they shield defendants from prosecution under 18 U.S.C. § 1015(a) for failing to disclose overlaps in marital relations on citizenship applications or to officers of the United States government.[6]

Under these tenets, we hold that a person is "married" for purposes of the citizenship application question "Have you ever . . . been married to more than one person at the same time?" if he participated in a marriage ceremony while still married to another. Our interpretation of the term "married" as used in the application is consistent with decisions from other jurisdictions. In particular, the First Circuit in *Boufford v. United States*, 239 F.2d 841 (1st Cir. 1956) addressed this precise issue under nearly identical facts:

> It appears that Boufford was married in 1912 to one Josephine Demers; that this marriage has never been terminated; that he is still living in Newmarket, N.H., with his wife Josephine; that in 1925 when Boufford

---

[6]The government alleges that Ali's marriages to Sweet were merely part of a "scheme to obtain a green card and citizenship." According to its brief, Ali "falsely told Ms. Sweet that he had never been married." Sweet allegedly later discovered that Ali was actually married. Ali and Sweet are now divorced. The government also alleges that Ali concealed from two of his attorneys, an attorney he retained to assist him in applying for the green card and the attorney who accompanied him to the interview for naturalization on November 30, 2005, that he "married" Sweet in October 1995.

> was in the National Guard in New York he went through a ceremony of marriage with a girl down there . . . .

*Id*. at 843.  Like Ali, Boufford applied for United States citizenship and responded in similar fashion to questions about his marital history:

> Question 22 . . . read as follows:
>
> "How many times have you ever been married?  (Typed answer:) once. How many times has your husband or wife been married?  (Typed answer:) once.  If more than once, give date, place, name of spouse, and manner and date of termination of your marriages and marriages of your spouse.
>
> "(Space left blank)"

*Id*.  Boufford was charged with knowingly making a false statement under oath, in violation of 18 U.S.C. § 1015(a).  His defense was

> based upon the proposition that as a matter of law Boufford's answer "once" to the inquiry as to how many times he had ever been married was a truthful answer to the question as framed, for the ceremony of marriage which Boufford went through in 1925 did not result in the creation of the legal status of wedlock with the New York girl, in view of the provision of § 6 of the New York Domestic Relations Law, McKinney's Consol. Laws, c. 14, to the effect that a "marriage is absolutely void" if contracted by a person who has a husband or wife by an earlier, though still subsisting, marriage.

*Id*. at 843-44.  The district court in *Boufford* rejected the defense, reasoning that:

> the word "married" as used in question 22 "refers to the ceremony as well as to the state of wedlock.  The purpose of the Government in asking the question was undoubtedly to discover what possible legal obligations, liabilities and relationships the applicant for citizenship may have contracted in the past.  This includes all of his involvements in valid, voidable, and void marriages or the marriage ceremony.  And though the defendant was married only 'once' in the sense that he had entered into only one valid state of wedlock, it is also true that he was married 'twice' in that the second marriage ceremony, though a nullity, could give rise to certain legal responsibilities."

*Id*. at 844.  The First Circuit affirmed the district court's decision on that point, explaining:

Conceding that the point is not free from doubt, we think upon the whole that the district judge's ruling as to the meaning of the question put in interrogatory 22 was correct, and that no error was committed in the refusal to grant the defendant's motion for a judgment of acquittal (which was the only ground of reversal urged on appeal). The question, put as in this case to an unschooled layman, could hardly have been intended to elicit a lawyer's technical answer. In many cases, whether a second marriage ceremony results in the creation of a new state of wedlock may depend upon the validity of a prior divorce decree, a matter which even a lawyer may sometimes not be sure about. Indeed, on the face of the New York statutory provisions, it is apparent that the word is used as referring to the ceremony of marriage rather than to the creation of a state of wedlock. Section 6 of the Domestic Relations Law of New York, which appellant stresses so much, says a "marriage is absolutely void" if contracted by a person who has a spouse living. And § 340 of the New York Penal Law, McKinney's Consol. Laws, c. 40, provides that a "person who, having a husband or wife living, marries another person, is guilty of bigamy." In the leading case of *Commonwealth v. Mash*, 1844, 7 Metc. (Mass.) 472, the conviction of a woman for bigamy was sustained where she went through the form of a second marriage less than seven years after her husband had disappeared, though she honestly believed at the time of the second ceremony that he was dead. Chief Justice Shaw stated at page 473:

"It appears to us, that in a matter of this importance, so essential to the peace of families and the good order of society, it was not the intention of the law to make the legality of a second marriage, whilst the former husband or wife is in fact living, depend upon ignorance of such absent party's being alive, or even upon an honest belief of such person's death. Such belief might arise after a very short absence. But it appears to us, that the legislature intended to prescribe a more exact rule, and to declare, as law, that no one should have a right, upon such ignorance that the other party is alive, or even upon such honest belief of his death, to take the risk of marrying again, unless such belief is confirmed by an absence of seven years, with ignorance of the absent party's being alive within that time."

Therefore, we agree with the district court that the answer "once" was not a correct answer to the question as properly interpreted.

*Id*. at 844-45 (internal citations omitted).

In *State v. Fitzgerald*, 726 P.2d 1344 (Kan. 1986), the Supreme Court of Kansas considered whether annulment of the second marriage precludes a conviction for bigamy. *Id*. at 1345. The defendant in *Fitzgerald* was married and, while attending

college away from his wife, "married" another. *Id*. Approximately one year later, the second wife discovered that the defendant was already married and received an annulment. *Id*. Thereafter, the defendant was charged with bigamy, but the trial court dismissed the charge on the ground that no "marriage" between the defendant and the second wife occurred because the marriage was annulled. *Id*. The trial court held that "[i]t is not sufficient to show that the Defendant went through the 'actions' of becoming married. It must be shown that Defendant was 'married' *lawfully* in order to successfully prosecute him for Bigamy." *Id*. at 1346-47.

The Supreme Court of Kansas disagreed, holding that annulment of the second (or bigamous) marriage does not bar a conviction for bigamy based upon the annulled marriage. *Id*. The *Fitzgerald* court explained that:

> [t]he crime of bigamy is defined as the act of marrying or contracting a second marriage while the spouse by a former marriage is still alive and the former marriage is still in force.
>
> * * *
>
> In the present case the granting of the annulment was done solely for the benefit and convenience of the victim . . . . The order of annulment had no effect on the actual legal status of the alleged marriage. The ruling of the trial court, if approved, would effectively nullify the offense of bigamy [in Kansas] since under Kansas law a bigamous marriage can never be a valid marriage and is always void.
>
> While it is true that [the Kansas bigamy statute] is a penal statute and subject to the rule requiring strict construction in favor of the accused, this rule is subordinate to the rule requiring judicial interpretation to be reasonable and sensible to effectuate the legislative design and intent in enacting the statute. Adoption of the rule pronounced by the trial court would effectively erase the crime of bigamy from our law, an unreasonable interpretation and one clearly contrary to the specific legislative intent. A person cannot be lawfully married and also guilty of bigamy for the same marriage. We find the rationale of our sister states persuasive and hold that when a person enters into a purported marriage contract or relationship at a time when the person already has a living spouse, the crime of bigamy has been committed. Annulment of the second or bigamous marriage is no defense to the crime.

*Id*. at 1345-47 (internal citations omitted).

Similarly, in *State v. Eden*, 169 S.W.2d 342 (Mo. 1943), the defendant appealed his conviction and sentence for bigamy, contending that the second marriage was absolutely void by statute and that, therefore, there was no "marriage." *Id*. at 343. In affirming the conviction and sentence, the Supreme Court of Missouri explained that:

> it is the appearing to contract a second marriage and going through the ceremony which constitutes the crime of bigamy; otherwise it could never exist in ordinary cases, as a previous marriage always renders null and void a marriage that is celebrated afterward by either of the parties during the lifetime of the other.

*Id*. at 345-46.

And in *Allen v. State*, 87 S.E. 681 (Ga. Ct. App. 1916), the Georgia Court of Appeals considered whether it is a defense to a charge of bigamy that the defendant, while married, attempted to marry another person who was also married. The defendant in *Allen* argued that he could not be convicted of bigamy because both he and the woman he attempted to marry could not legally "contract marriage" in that both were already married. *Id*. at 682. The *Allen* court rejected that argument, explaining:

> Counsel for Allen bases his argument upon the contention that, under the evidence, neither of the parties was able to contract marriage, and that, without ability upon the part of either so to contract, "there could be no contract or consummation according to law." The only authority cited by counsel for plaintiff in error on this point is sections 2930 and 2931 of the Civil Code, the first of which gives the essentials of a "valid marriage" in this State, and the other pointing out those who are legally able to contract marriage. Counsel, it seems to us, loses sight of the fact that these code sections deal solely with "valid marriages," and that if his contention be correct, there could never be, in Georgia, a conviction of bigamy. One can not be convicted for entering into a valid marriage. A marriage between one already married and one unmarried is not a valid marriage, because one of the parties labors under the disability of a "previous marriage undissolved," yet a married person who enters into the contract with one unmarried can be convicted legally of bigamy. We are unable to see a distinction between invalid marriages, whether entered into between one married and one unmarried, or between two persons both of whom are laboring under disability because of previous marriages undissolved. Before there can be bigamy, it is true, there must have been a prior legal contract of marriage; but the crime of bigamy is based entirely upon the proposition that the second or bigamous marriage

is not and can not be legal.  If it were a legal marriage, there could be no bigamy.

\* \* \*

"It is now held by all the courts that the word 'marries,' when applied to a subsequent marriage, means going through a form of marriage." 4 Am. & Eng. Enc. L. (2d ed.) 39.  "Bigamy is popularly described as the crime of having two wives or two husbands at the same time.  To state the matter more accurately, it may be said that the crime of bigamy is committed by the act of marrying while the spouse by a former marriage is still alive and the former marriage is still in force."  . . . [I]f any married person shall go through the form of marriage with another person, he shall be punished as prescribed by law.  Bigamy, or polygamy, therefore consists in the making of the unlawful contract and the abuse of the formality which the law has enjoined as requisite to the creation of the marital relation.  "And it is the abuse of this formal and solemn contract, by entering into it a second time when a former husband or wife is still living, which the law forbids because of its outrage upon public decency, its violation of the public economy, as well as its tendency to cheat one into a surrender of the person under the appearance of right.  A man takes a wife lawfully when the contract is lawfully made.  He takes a wife unlawfully when the contract is unlawfully made, and this unlawful contract the law punishes."

*Id*. at 682-83 (internal citations omitted).  Applying its reasoning to the facts before it, the *Allen* court affirmed the conviction of bigamy, even though the second "marriage" was void ab initio.  *Id*. at 683.

We agree with these authorities from other jurisdictions and with the well-established principle that statutes declaring bigamous marriages "void ab initio" do not preclude convictions for bigamy, nor do they relieve applicants applying for the privileges of United States citizenship from completely and truthfully disclosing their marital relationships.[7]  Accordingly, we hold that a person is "married" for purposes of

---

[7]We note that the "rule of lenity" is not applicable under these circumstances because "the rule of lenity is relevant only if there is 'grievous ambiguity or uncertainty in [a] *statute*,' and only if 'after seizing everything from which aid can be derived, we can make no more than a guess as to 'the meaning of the language at issue.'" *United States v. Smith*, 549 F.3d 355, 363 n.2 (6th Cir. 2008) (quoting *Muscarello v. United States*, 524 U.S. 125, 138-39 (1998)).  See also 3 Singer, *Sutherland Statutory Construction* 59:4 (6th ed. 2008) ("The 'rule of lenity' applies where there is ambiguity in a criminal statute.")  Here, the alleged ambiguity is not an ambiguity in the language of the statute of conviction, 18 U.S.C. § 1015(a); rather, the alleged ambiguity concerns the word "married" in the actual question posed on the citizenship application.  Further, "after seizing everything from which aid can be derived," we need not "guess" as to the meaning of the word "married" because it has been interpreted by various

the citizenship application question "Have you ever . . . been married to more than one person at the same time?" if he participated in a marriage ceremony while still married to another.

For these reasons, we affirm the district court's denial of Ali's motion to dismiss the indictment.

III.

Next, we address the district court's grant of the government's motion to exclude Ali's "mistake of law" defense. In this regard, we acknowledge that while the making of a "false statement under oath" is an element required to convict under 18 U.S.C. §1015(a), the government must also prove beyond a reasonable doubt that Ali "knowingly" made such a false statement. *Boufford*, 239 F.2d at 845. The government characterized Ali's defense theory that he honestly believed he had never been married to more than one person at the same time as a "mistake of law defense." Specifically, the government argued in its motion to exclude the purported "mistake of law defense" that "the knowledge requirement only requires the United States to show the defendant knew he had been married to more than one person at the same time, when he answered no" on the application, and "the defendant is not allowed to present his mistaken belief that the marriage never legally existed." The district court granted the motion, adopting the government's reasoning.

While we typically review a district court's ruling on a motion to exclude evidence for abuse of discretion, *United States v. Perry*, 438 F.3d 642, 647 (6th Cir. 2006), a district court's characterization of a defense as a "mistake of law defense" and decision excluding evidence on that basis are purely rulings of law and are therefore reviewed de novo. *United States v. Hunter*, 4 F. App'x 295, 300 (6th Cir. 2001) (unpublished) (holding that a district court's determination that a defense is unavailable as a matter of law is reviewed de novo); *United States v. de Cruz*, 82 F.3d 856, 867 (9th

---

jurisdictions to mean participation in a marriage ceremony.

Cir. 1996) (holding that "[a] district court's decision to preclude a mistake of law defense is reviewed de novo.").

By granting the government's motion to exclude evidence regarding Ali's interpretation of the word "married" in light of the imprecise definition of the term and his alleged "honest beliefs" about whether he had "ever been married to more than one person at the same time," the district court essentially converted 18 U.S.C. § 1015(a) into a strict liability offense. In so doing, it removed Ali's ability to demonstrate that he did not "knowingly" make a false statement, his central defense to the charges against him.

The district court mischaracterized Ali's defense as a "mistake of law defense" and therefore erred in excluding it. The mistake of law defense rests upon the "deeply embedded" principles "in our American legal tradition" that "ignorance of the law is no excuse" for violating it and that "citizens [are presumed] to know the requirements of the law." *United States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999). Thus, if Ali conceded that he knowingly made false statements but asserted that he was unaware that such conduct was criminal under § 1015(a), that defense would constitute a true "mistake of law defense" and would be properly excluded. But Ali does not claim ignorance of § 1015(a); rather, he argues that the government cannot sustain its burden of proof on the mental state that is an element of the crime. Specifically, he asserts that he did not "knowingly" make a false statement to the government because he believed, based on advice from counsel, that his first attempted marriage to Sweet in October 1995 was invalid and did not legally constitute a marriage under applicable state law. Allegedly based upon that same legal advice, he then "remarried" Sweet in November 1996, after being properly divorced from Bouhiaoui. On these facts, it is entirely feasible that Ali honestly believed that "no" was a truthful answer to the question asking whether he had ever been married to more than one person at the same time.[8]

---

[8]In fact, all of the evidence in this case appears to support Ali's position that he thought he was divorced when he entered into his second marriage, and we, like the court in *Boufford*, question whether the government is subjecting Ali to a "dubious prosecution." *Boufford*, 239 F.2d at 846 n.1.

If we were to adopt the government's position and the district court's ruling, anyone could be convicted of making a false statement under § 1015(a) even if that was not his intent. This is particularly true of a defendant who seeks advice from counsel, learns that a marriage is "void ab initio" under applicable state law because he was not yet divorced when he attempted to enter into that marriage, and then remarries believing that the attempted marriage was of no legal consequence. Of course, it could also be true, as the government alleges, that a defendant who does not disclose such an overlap in marital relationships, knowing at the time that there was such an overlap, is intending to conceal. In either case, the proper resolution is to put the government to its burden of proof and permit the defendant to present evidence of his "knowledge" before a jury of his peers.

This approach comports with that taken in *Boufford*, where the First Circuit vacated the defendant's conviction under § 1015(a) and remanded the case for further proceedings. 239 F.2d at 846. The *Boufford* court held that the district court erred in concluding that the defendant's knowledge involved a "straight question of law" that rendered it a matter for the court, not the jury, to decide. *Id*. at 845. Rejecting the district court's determination that the defendant's mental state was a legal, rather than a factual, issue, the First Circuit in *Boufford* stated:

> It seems to us . . . that in a case of this sort the prosecution has to establish not only that the defendant made a "false statement under oath," but also that he "knowingly" made such a false statement. Thus if it appeared that the defendant could have believed, in good faith, upon advice of counsel, that the response he made to question 22 was a true statement, and was all that the inquiry called for, then it could not be said that he "knowingly" made a false statement, as charged in the indictment. *This inquiry as to the defendant's subjective state of mind may present a typical issue appropriate for determination by a jury.*
>
> The inquiry "How many times have you ever been married?" contains a possible ambiguity. The interrogatory goes on to state that, if the answer to the question is "more than once, give date, place, name of spouse, and manner and date of termination of your marriages." This reference to the "date of termination" of plural marriages might plausibly be urged to refer to the legal state of wedlock, rather than to a void ceremony of marriage.

* * *

> [W]e suppose that the defendant upon a new trial might very well be able to present competent evidence of the fact that the defendant executed the application after the answers to the questions had been inserted by the lawyer, and upon the lawyer's assurance that the answers truthfully disclosed what the inquiries, properly interpreted, called for.

*Id*. at 845-46 (internal footnote omitted) (emphasis added).  The court also noted that the record was "devoid of any concession that the defendant 'knowingly' made a false statement."  *Id*. at 846.

We therefore hold that the district court erred in granting the government's motion to exclude Ali's defense.

## IV.

For the reasons stated, we affirm the district court's denial of the motion to dismiss the indictment, reverse the district court's grant of the government's "Motion to Exclude Mistake of Law Defense," and remand for further proceedings consistent with this opinion.

---

**CONCURRENCE**

---

MYRON H. BRIGHT, Circuit Judge, concurring.  I concur in Judge Griffin's fine opinion.  I write separately to add an additional comment.  Defendant Ali's attempt to become a naturalized citizen has been pending for six years and the instant criminal charge has been pending since May 2006.  It is time to end the delays.

I express my view that based on the record before this court, no fact finder (judge or jury) could or should find Ali guilty of the criminal charges, in light of the strong, if not conclusive evidence, of his good faith belief that he entered into a valid marriage with Paula Sweet on October 11, 1995.

---

**CONCURRING IN PART, DISSENTING IN PART**

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. I join the majority's holding that the district court erred in granting the government's motion to exclude Ali's "mistake of law" defense. I disagree, however, with the majority's holding affirming the district court's denial of Ali's motion to dismiss the indictment.

It is undisputed that Ali's attempted second marriage was void *ab initio* under state law and therefore without any legal effect. *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (definition of "void marriage") ("A void marriage does not exist, has never existed, and needs no formal act to be dissolved."); *see also id.* (definition of "marriage") ("The essentials of a valid marriage are (1) *parties legally capable of contracting to marry*, (2) mutual consent or agreement, and (3) an actual contracting in the form prescribed by law." (emphasis added)); Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/married (last visited Oct. 28, 2008) (defining "married" as "being in the state of matrimony"). As a legal matter, therefore, Ali was never "married" to more than one person at the same time. Rather, he attempted a second marriage, but that attempt failed because of Ali's married status. Consequently, Ali's answer of "no" to the question on the citizenship application whether he had "ever . . . been married to more than one person at the same time" was true as a matter of law.

The majority avoids this result by ignoring the plain meaning of "married" and purporting to divine the intent of immigration authorities in posing this question on the citizenship application. According to the majority, a person is "married" for purposes of this question "if he participated in a marriage ceremony while still married to another." Maj. Op. at 13-14. The majority posits that both laypersons and legal experts would "understand that the purpose of such a question in the 'moral character' section of a citizenship application is to assess whether the applicant has ever committed bigamy." Maj. Op. at 7. However, nothing in the record reveals the purpose of

immigration authorities in posing this question to citizenship applicants or that any particular purpose was communicated to Ali.  If in fact the question was intended to discover whether an applicant had committed acts constituting state-law bigamy, the drafters of the question could have asked whether the applicant had ever engaged in a wedding ceremony or otherwise attempted a second marriage while still married to another.  At the very least, the question, as drafted, is ambiguous.  Because applicants such as Ali face possible criminal sanctions in this context, immigration authorities should bear the burden of drafting clear and unambiguous questions before applicants may be penalized for making false statements on citizenship applications.

The majority also makes a misguided attempt to analogize the false-statements offense with which Ali was charged with the very different state-law offense of bigamy. The majority warns that "were [we] to adopt [Ali's] reasoning and dismiss the indictment, it would nullify all criminal bigamy laws by giving a defendant charged with bigamy a foolproof defense—that he could not have, as a matter of law, committed bigamy because his attempted second marriage was automatically void." Maj. Op. at 8. But the warning is alarmist; it is already well established in state courts that the offense of bigamy is completed when a person, while legally married to another, attempts to enter a second marriage and, to that end, goes through a marriage ceremony. *See State v. Fitzgerald*, 726 P.2d 1344, 1346 (Kan. 1986) ("[I]t is the appearing to contract a second marriage and going through the ceremony which constitutes the crime of bigamy . . . ." (internal quotation marks omitted)); *Allen v. State*, 87 S.E. 681, 682 (Ga. 1916) ("It is now held by all the courts that the word 'marries,' when applied to a subsequent marriage, means going through a form of marriage." (internal quotation marks omitted)). Further, the bigamy case law makes clear that an individual may be convicted of bigamy notwithstanding the fact that the attempted second marriage is void *ab initio* under state law. *See, e.g.*, 11 Am. Jur. 2d *Bigamy* § 9 ("[I]t is the appearing to contract a second marriage and the going through the ceremony that constitutes the crime of bigamy; otherwise, it never could exist in ordinary cases, since a previous marriage always renders null and void a marriage that is celebrated afterward by either of the parties during the lifetime of the other."); *see also Stevens v. State*, 243 S.W.2d 162, 163 (Tex.

Crim. App. 1951) (quoting identical language in former version of Am. Jur.); *State v. Eden*, 169 S.W.2d 342, 345 (Mo. 1943) (same).  The issues presented in this case, therefore, have no possible bearing on the well-settled doctrines that govern the nature of the offense of bigamy and the defenses available to defendants in that context.

Because it is undisputed that Ali was never legally "married" to two people at the same time, his answer of "no" to the question whether he had "ever . . . been married to more than one person at the same time" was true as a matter of law.  Accordingly, I would reverse the district court's denial of Ali's motion to dismiss the indictment.