FILED
United States Court of Appeals
Tenth Circuit

December 31, 2013

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

SHANNAKAY MARIE HUNTER a/k/a
Shannakay Marie Priest,

        Defendant - Appellant.

No. 12-3323

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 6:12-10065-MLB-1)**

---

Kari S. Schmidt, Conlee Schmidt & Emerson, LLP, Wichita, Kansas, for
Defendant-Appellant.

Barry R. Grissom, United States Attorney, and Brent I. Anderson, Assistant
United States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

---

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.

---

**BACHARACH**, Circuit Judge.

---

Ms. Shannakay Hunter entered the United States from Jamaica. Hoping to stay, she married a United States citizen. The government regarded the marriage as a sham and charged Ms. Hunter with conspiracy and participation in a fraudulent marriage under 8 U.S.C. § 1325(c). A jury found her guilty on both charges,[1] and the district court entered a judgment of conviction. Ms. Hunter appeals, arguing that: (1) the district court should have required proof that Ms. Hunter had married solely to evade the immigration laws, (2) the evidence of guilt was insufficient, (3) the marriage was "void" under state law, (4) the application of § 1325(c) resulted in a denial of equal protection, and (5) § 1325(c) is overbroad. Rejecting each argument, we affirm.

I.    The Jury Instruction

Ms. Hunter proposed a jury instruction stating that the government bore the burden of proving that she had "entered into the marriage for the purpose of evading any provision of the immigration laws." R. vol. 1, at 42.

The judge instructed the jury that § 1325(c) was violated only if "[t]he defendant entered into the marriage for the purpose of evading a provision of the immigration laws." R. vol. 1, at 76. This instruction was virtually identical to the one proposed by Ms. Hunter.

---

[1]    Ms. Hunter was also convicted of making a false statement to the government. But this offense is not discussed in Ms. Hunter's briefs.

Ms. Hunter argues that the government must prove that her sole intent was to evade the immigration laws. But the trial court's instruction was virtually identical to the jury instruction proposed by Ms. Hunter. Thus, any error was "invited" by Ms. Hunter and cannot form the basis for reversal. *See United States v. Visinaiz*, 428 F.3d 1300, 1310-11 (10th Cir. 2005).

II.    Sufficiency of the Evidence

Ms. Hunter argues that the evidence was insufficient to support a conviction. We disagree.

In evaluating this argument, we view the evidence in the light most favorable to the government. *See United States v. MacKay*, 715 F.3d 807, 812 (10th Cir. 2013). The evidence suffices if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hutchinson*, 573 F.3d 1011, 1033 (10th Cir. 2009).

The government presented evidence that Ms. Hunter had met her husband on her wedding day, had never lived with him, could only stay in the country by marrying a United States citizen, had paid her husband, and had taken photographs of the wedding to make it "believable." R. at 51-53, 58, 62, 171-72, 190, 267. This evidence was sufficient to support the finding of guilt.

III.    "Voidness" of the Marriage

3

Section 1325(c) covers "sham marriages." But Ms. Hunter argues that: (1) in Kansas, the marriage was void if it was illegal, and (2) § 1325(c) makes a "sham marriage" illegal. Thus, according to Ms. Hunter, the marriage was void, which means it never really existed. And, if the marriage "never existed," she could not have violated § 1325(c). This argument is meritless.

At trial, defense counsel did not dispute that Ms. Hunter had knowingly entered into the marriage. R. vol. 3, at 416. Thus, we review the present argument only to determine whether the district court committed plain error. *See United States v. Ray*, 704 F.3d 1307, 1316 n.3 (10th Cir. 2013). An error is "plain" only "if it is clear or obvious." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005).

The meaning of "marriage" under § 1325(c) involves federal law, not state law. *See Skelly v. INS*, 630 F.2d 1375, 1382 (10th Cir. 1980) ("[T]he status of Mrs. Skelly's marriage under the federal immigration laws is not governed by state law."). The term "marriage" commonly refers to a state of wedlock. *E.g.*, IX *The Oxford English Dictionary* 396 (2d ed. 1998). A rational juror could have found a state of wedlock. After all, Ms. Hunter had a wedding, signed a marriage license, and filed it with the court.

Shunning the commonly understood meaning of the term "marriage," Ms. Hunter focuses on Kansas law. She argues that because Kansas law renders the marriage void, the marriage never really existed and could not have given rise to a

4

crime under federal law. This argument is invalid because it misconstrues Kansas law and ignores Congress's obvious purpose in enacting § 1325(c).

First, Ms. Hunter misinterprets Kansas law by assuming that in this state, a crime cannot be based on the existence of a "marriage" that is void. This assumption is invalid. In Kansas, for example, a defendant can be guilty of bigamy even though the second marriage is considered "void." *See Kansas v. Fitzgerald*, 726 P.2d 1344, 1345-47 (Kan. 1986). Otherwise, the Kansas Supreme Court reasoned, "bigamy" would be erased as a crime because "under Kansas law a bigamous marriage . . . is always void." *Id*. at 1346-47.

Second, Ms. Hunter ignores Congress's obvious purpose. In enacting § 1325(c), Congress showed no sign that it wanted criminality to depend on whether a marriage was "void" or "voidable" under state law. Presumably for this reason, Ms. Hunter's argument is unsupported by any case law. *See United States v. Ali*, 557 F.3d 715, 720 (6th Cir. 2009) (rejecting the defendant's challenge to a bigamy conviction on the ground that the second marriage was void, reasoning that this "virtual 'impossibility' defense is not what state legislatures intended when they enacted laws voiding bigamous marriages"); *Boufford v. United States*, 239 F.2d 841, 843-45 (1st Cir. 1956) (holding that the defendant's statement in an application for citizenship, that he had only been married once, was false even if the second marriage had been a nullity because it was bigamous).

5

For both reasons, plain error did not arise from the application of § 1325(c) to a marriage allegedly void under Kansas law. Thus, we reject Ms. Hunter's argument.

## IV. Equal Protection

Ms. Hunter also argues that application of § 1325(c) resulted in a denial of equal protection. We reject this claim because it was inadequately developed in the opening brief and is invalid.

For this claim, Ms. Hunter had to show membership in a class of persons treated less favorably than another class of similarly situated persons. *See Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 53-54 (10th Cir. 2013). The classes are similarly situated only if they are alike in "all relevant respects." *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008). In her opening brief, Ms. Hunter does not point to any class of persons obtaining preferential treatment. This failure is fatal to the equal-protection claim.

In her reply brief, Ms. Hunter does identify two classes that allegedly obtained different treatment: (1) individuals engaging in sham weddings in Kansas, and (2) individuals engaging in sham marriages in Florida. This effort is too late because Ms. Hunter could not wait until her reply brief to say — for the first time — who had been treated differently. *See United States v. Ford*, 613 F.3d 1263, 1272 n.2 (10th Cir. 2010).

Ms. Hunter's claim is not only late, but also invalid because she has the concept of equal protection backward. The two classes she identifies are individuals who marry to evade the immigration laws in Kansas and Florida. Pointing to her earlier argument, Ms. Hunter says:

- The Kansan can avoid criminal liability because the marriage is void; but

- the Floridian would be guilty of a crime under 8 U.S.C. § 1325(c).

If this distinction is true, Ms. Hunter would belong to a class treated more favorably — not less — than similarly situated individuals in Florida. But the right to equal protection exists for the benefit of the victims — not the beneficiaries — of discriminatory treatment. Thus, Ms. Hunter cannot prevail on the equal-protection theory advanced in her reply brief.

V.    Overbreadth

Ms. Hunter also argues that § 1325(c) is overbroad because it "chills" the right to marry for citizens and immigrants subject to removal. Appellant's Opening Br. at 21. This argument was not raised in the district court. As a result, we confine our review to the plain-error standard. *See United States v. Ray*, 704 F.3d 1307, 1316 n.3 (10th Cir. 2013). The district court did not commit plain error by declining to strike down § 1325(c) as overbroad.

Ordinarily, an error is considered "plain" only if the Supreme Court or the Tenth Circuit Court of Appeals has addressed the issue. *United States v. Ruiz-*

*Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003). An exception exists when the district court's ruling involves clear error. *United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2009).

The district court did not commit plain error by declining to consider § 1325(c) as overbroad. No federal court of appeals has treated § 1325(c) as overbroad. And the statute could only be considered overbroad if the threat of criminal prosecution would chill the decision to associate for a lawful purpose. *See United States v. Wilson*, 154 F.3d 658, 665 (7th Cir. 1998) ("Freedom of association permits individuals to associate for lawful purposes and provides 'a right to join with others to pursue goals independently protected by the [F]irst [A]mendment.'" (quoting *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1387 (7th Cir. 1992))).

The record did not supply any basis for the district court to find (on its own motion) that individuals would hesitate to marry for a lawful purpose because of a threat of criminal prosecution under § 1325(c). And in the absence of evidence showing a constraint on the decision to marry, we conclude that the district court's application of § 1325(c) does not constitute plain error. *See United States v. Di Petro*, 615 F.3d 1369, 1371-73 (11th Cir. 2010) (rejecting a challenge to § 1325(c) on the ground that it is void for vagueness based on a First Amendment right to associate through marriage).

VI. Conclusion

8

We conclude:

- Any alleged error in the disputed jury instruction would have been unreviewable because it was invited by defense counsel;

- the evidence sufficed for a finding of guilt under 8 U.S.C. § 1325(c);

- Ms. Hunter does not show plain error based on her theory that the marriage would have been considered "void" under Kansas law;

- she does not show a denial of equal protection; and

- she does not show plain error based on overbreadth.

Accordingly, we affirm.